## DEPOSIT BANK v. FRANKFORT.

ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 33. Argued October 20, 21, 1903.—Decided December 14, 1903.

A right claimed under the Federal Constitution, finally adjudicated in the Federal courts, can never be taken away or impaired by state decisions, refusing to give due weight to such Federal judgment properly invoked for the protection of the party in whose favor it was rendered.

When a state court refuses to give effect to a judgment of a Federal court which adjudicates that one of the parties has a contract within the protection of the impairment clause of the Federal Constitution it denies a right secured by the judgment of the Federal court upon matters wherein its decision is final until reversed in an Appellate Court or modified or set aside in the court of its rendition.

The adjudication of a Federal court establishing a contract exempting from taxation although based upon the judgment of a state court given as a reason therefor is equally effectual as *res judicata* between the parties as though the Federal court had reached its conclusion as upon an original question; and under the doctrine of *res judicata* such adjudication will estop either party in subsequent litigation between themselves from again litigating the question of contract determined in the former action, even though the judgment of the state court upon which the Federal court based its decision has meanwhile been reversed by the highest court of that State.

Where it has been litigated and determined in a Federal Court that the state law under which the taxes were levied is unconstitutional within the impairment clause of the Constitution because of a contract which exempted from all taxation, including particular years then in controversy, the question is *res judicata* as to the right to levy the tax under such law in any other year although it may have been established by the highest court of that State that an adjudication concerning taxes for one year cannot be pleaded as an estoppel in suits involving taxes of other years.

This action was brought by the board of councilmen of the city of Frankfort in the Franklin Circuit Court for the recovery of certain *ad valorem* taxes under levies for the years 1892, 1893 and 1894. The tax for the year 1892 has been eliminated from the controversy, and the matters now disputed include the taxes for the years 1893 and 1894 and interest. The bank in the first instance relied upon the provisions of a certain law of the State of Kentucky, known as the Hewitt law, as exempting it from

the taxes sought to be enforced. This law was passed in 1886, Session Laws of Kentucky, 1885-6, pp. 140, 144-147, 201, and provided:

"SECTION 1. That shares of stock in state or national banks, and other institutions, of loan or discount, and in all corporations required by law to be taxed on their capital stock, shall be taxed 75 cents on each share thereof, equal to $100, or on each $100 of stock therein owned by individuals, corporations or societies, and said banks, institutions and corporations shall, in addition, pay upon each $100 of so much of their surplus, undivided surplus, undivided profits, or undivided accumulations, as exceeds an amount equal to ten per cent of their capital stock, the same rate of taxation that is assessed upon real estate, which shall be in full of all tax, State, county and municipal. .. . .

"SEC. 4. That each of said banks, institutions and corporations, by its proper corporate authority, with the consent of a majority in interest of a quorum of its stockholders, at a regular or called meeting thereof, may give its consent to the levying of said tax, and agree to pay the same as herein provided, and to waive and release all right under the acts of Congress, or under the charters of the state banks to a different mode or smaller rate of taxation, which consent or agreement to and with the State of Kentucky shall be evidenced by writing under the seal of such bank and delivered to the governor of this Commonwealth; and upon such agreement and consent being delivered, and in consideration thereof, such bank and its shares of stock shall be exempt from all other taxation whatsoever so long as said tax shall be paid during the corporate existence of such bank. .

"SEC. 5. The said bank may take the proceeding authorized by section 4 of this act at any time until the meeting of the next general assembly: provided, they pay the tax provided in section 1 from the passage of this act.

"SEC. 6. This act shall be subject to the provisions of section 8, chapter 68, of the General Statutes.

"SEC. 7. If any bank, State or national, shall refuse or fail to pay the tax imposed by this act, or shall fail or refuse to make the consent and agreement as prescribed in section 4, the shares of stock of such bank, institution or corporation and its surplus, undivided accumulations and undivided profits, shall be assessed as directed by section 2 of this act, and the same taxes, State, county and municipal, shall be imposed, levied and collected upon the assessed shares, surplus, undivided profits, undivided accumulations, as is imposed on the assessed taxable property in the hands of individuals: Provided, that nothing herein contained shall be construed as exempting from taxation for county or municipal purposes any real estate or building owned and used by said banks or corporations for conducting their business, but the same may be taxed for county and municipal purposes as other real estate is taxed."

The Deposit Bank of Frankfort accepted the terms of the Hewitt law and made payment of the taxes as therein provided.

The Circuit Court of Franklin County, by judgment upon the pleadings in this case, sustained the bank's claim of exemption, holding the Hewitt law to be an irrevocable contract between the bank and the State. Upon appeal, this judgment was reversed by the Kentucky Court of Appeals, that court holding that the Hewitt act did not constitute an irrevocable contract, and had been repealed by the later act of 1892, under which act the bank was not exempt from payment of the taxes in controversy.

After the case was remanded to the Circuit Court for a new trial the bank filed a supplementary answer, setting up as an estoppel a decree of the United States Circuit Court for the District of Kentucky rendered in 1898, in a case to which the bank and the complainant were parties. The decree in that case was rendered upon a bill filed by the bank, in which it set up, among other things, a certain judgment of the Franklin Circuit Court rendered in 1896, in which it was adjudged that the Hewitt law constituted an irrevocable contract exempting the bank from taxation. At the time of the rendition of the

decree in the United States court the judgment of the state Circuit Court relied on was in full force although subsequently reversed by the Kentucky Court of Appeals.

In the Federal court the following decree was rendered:

"The court being sufficiently advised, files its opinion herein.

"It is therefore adjudged, ordered and decreed as follows:

"First. That the demurrer of the defendants Board of Councilmen of the City of Frankfort and Franklin County and of the defendants Samuel H. Stone, G. W. Long and Charles Finley be, and the said demurrers are, hereby overruled; to which the said defendants each except.

"Second. The plea of defendants Board of Councilmen of the City of Frankfort and Franklin County to the bill of complaint is overruled; to which the said defendants except.

"Third. Thereupon came the complainant, by Frank Chinn, its counsel, and files its replication to the answer of the defendants, Board of Councilmen of the City of Frankfort and Franklin County. The defendants, County of Franklin and City of Frankfort, offered to file an amended answer; to which complainant objected, and the motion to file is overruled; to which said defendants except, and said amended answer is made a part of the record by the order of the court.

"And by consent this cause came on to be heard for final decree. The complainant read upon hearing its bill of complaint and its amended bill of complaint herein, together with all the exhibits filed with said bills, to wit:

"Exhibit 'A,' being the record of the proceedings in the case of Deposit Bank of Frankfort against Franklin County and John W. Gaines, sheriff.

"Exhibit 'B,' being the records in the proceedings in the case of Deposit Bank of Frankfort against Franklin County and R. D. Armstrong, sheriff.

"Exhibit 'C,' being judgment of Franklin Circuit Court, entered February 1, 1896, in the suit of Deposit Bank of Frankfort against Franklin County.

"Exhibit 'D,' being record of the proceedings in the case of

Board of Councilmen of City of Frankfort against Deposit Bank of Franklin.

"The defendant, The County of Franklin, read on the hearing its answer, and the defendant Board of Councilmen of the City of Frankfort read on the hearing the record of the proceedings in the case of Board of Councilmen of City of Frankfort against L. C. Norman, auditor, etc., and also read its answer.

"And it is now adjudged, ordered and decreed that the defendants, Samuel H. Stone, Charles Finley and George W. Long be, and they are hereby, perpetually enjoined and restrained from proceeding to value the franchise of the complainant under the act of November 11, 1892, for the years 1895, 1896, 1897, 1898, or for any other subsequent years until the expiration of the charter of the complainant, and are enjoined and restrained from certifying such value to the county clerk of Franklin County or to any officer of the board of councilmen of the city of Frankfort or the county of Franklin and the defendants, County of Franklin and Board of Councilmen of the City of Frankfort, are enjoined and restrained from endeavoring to collect any tax upon any such valuations; and the complainant, by making payments in accordance with the Hewitt law, is discharged in full from all taxes to be exacted from it under any form or by any authority.

"It is further adjudged, ordered and decreed that by reason of the several pleas of *res judicata*, relied on by the complainant in its bill, and as shown by the exhibits therewith, the complainant has established a contract with the Commonwealth of Kentucky, under the provisions of article 2 of the act of the general assembly of the State of Kentucky, entitled 'An act to amend the revenue laws of the Commonwealth of Kentucky,' approved May 17, 1886, and the acceptance of the same by the complainant, the terms of which contract the commonwealth cannot alter or change without the consent of the complainant; that by the terms of this contract the complainant and its shares of stock cannot, during its corporate existence, be assessed for taxation for State purposes in a different

mode or at a greater rate of taxation than as prescribed in said act, and can be assessed for taxation and taxed for county and municipal purposes only upon its real estate used by it in conducting its business; that the provisions of the present constitution of the Commonwealth of Kentucky and the act of November 11, 1892, in so far as they are intended to provide or do provide for any assessment or taxation of the complainant's property, rights of property, or franchise, or shares of stock, except to the extent and in the manner provided by sections 1, 2 and 3 of article 2 of the said act approved May 17, 1886, and except to assess and tax for county and municipal purposes upon its real estate used in conducting its business, are in violation of and repugnant to the Federal Constitution and void.

"And it is further adjudged that the complainant recover of the defendant its costs in this action expended.

"And came defendants and prayed an appeal in open court, and tendered their assignment of errors; whereupon the court allowed the appeal, and orders the assignment of errors to be filed and fixes the appeal bond at one thousand dollars."

This decree of 1898 was afterwards affirmed in this court. *Stone* v. *Deposit Bank*, 174 U. S. 800. The Franklin Circuit Court in the case now before us dismissed the petition upon the ground that there had been no proper return of no property found, and did not pass upon the question as to whether the decree of the United States court was effectual as an estoppel between the parties. Upon appeal to the Court of Appeals of Kentucky, it was held by a majority of the court, three judges dissenting, that the decree relied upon was not an estoppel. By writ of error that judgment is brought here for review.

*Mr. Frank Chinn*, with whom *Mr. D. W. Lindsey* was on the brief, for plaintiff in error:

The decree of the United States court relied on as a bar to this action having been rendered by a court having jurisdiction of the cause and of the parties, is conclusive upon the city in every other court so long as that decree stands unreversed.

*Hollister* v. *Abbott,* 64 Am. Dec. 342, and cases cited; *Dupuy* v. *Johnson,* 4 Bibb, 562; *Garner's Admr.* v. *Strode,* 5 Litt. 314; *Paul* v. *Smith,* 82 Kentucky, 431; *Davis* v. *McCorkle,* 14 Bush, 751.

And the fact that this action was begun before that in which the United States court suit was filed does not alter the rule. Am. & Eng. Ency. of Law, vol. 12, p. 149*c,* and cases there cited.

The Court of Appeals was without jurisdiction to decide whether or not the United States court based its judgment upon one or all of the pleas of *res judicata* set up and relied on by the bank in that case, the rule being well settled that as between national and state courts, neither will undertake to grant relief from a judgment rendered by the other. One having equitable grounds for relief from a judgment rendered in courts of either must apply to the court of the sovereignty in which the judgment was rendered. Freeman on Judgments, sec. 485, p. 852, citing *Riggs* v. *Johnson,* 6 Wall. 166; *United States* v. *Keokuk,* 6 Wall. 514; *Engles* v. *Miller,* 2 Rich. Eq. 320; *Strozen* v. *Hawes,* 30 Georgia, 578; 1 U. S. Stats. at Large, 335.

The Federal question is, that the rights and immunities which the Deposit Bank acquired under the decree of June, 1898, affirmed by this court, have been denied and disregarded by the state court by the judgment in error, in violation of section 709, Revised Statutes of the United States. Foster's Fed. P. & P. vol. 2, p. 1180, note 1, citing *Tex. & Pac. R. Co.* v. *Johnson,* 151 U. S. 81–99; U. S. Rev. Stat. sec. 709; *Pittsburgh &c. Ry. Co.* v. *Trust Company,* 172 U. S. 493; *Dowell* v. *Appellate,* 152 U. S. 327.

*Mr. W. H. Julian,* with whom *Mr. Ira Julian* and *Mr. T. H. Crockett* were on the brief, for defendant in error:

The sole ground relied on for reversal is that the United States Circuit Court for the District of Kentucky in *Deposit Bank* v. *Stone,* of 1898, held that the Hewitt law constituted

an irrevocable contract between the Deposit Bank of Frankfort and the State of Kentucky. If that proposition were true, the bank's plea of estoppel would not be available herein, because of the first judgment by the state court rendered in 1900, from which no writ or error was ever prosecuted or prayed. An estoppel against an estoppel sets the matter at large. Bigelow on Estoppel, 5th ed. p. 360, and authorities cited. The proposition, however, is unsound. The Federal court, in *Bank* v. *Stone,* did not hold that such law constituted an irrevocable contract between the bank and the State.

The question of Hewitt law contract decided by the state court in June, 1900, is an entirely different question from the question of estoppel decided by the Federal court in 1898.

The former is a Federal question. The latter is not a Federal question. *Phœnix Insurance Co.* v. *Tennessee,* 161 U. S. 184.

All that this court has ever required of the courts of last resort of the States, in giving effect to Federal court judgments, is: That Federal court judgments be given the same effect that is given state court judgments, of the same character and rendered under similar circumstances, by the courts of the State in which they are rendered. Section 905, Revised Statutes U. S., as construed by this court in numerous cases, so requires. *Mills* v. *Duryee,* 7 Cranch, 484; *Hampton* v. *McConnell,* 3 Wheat. 234; *Metcalf* v. *Watertown,* 153 U. S. 676, and cases cited; *McElmoyle* v. *Cohen,* 13 Pet. 326; *Christmas* v. *Russell,* 5 Wall. 290; *Thompson* v. *Whitman,* 18 Wall. 457; *Abraham* v. *Casey,* 179 U. S. 218. As to the effect as an estoppel given to such judgments, as that relied on by appellee herein, "by the courts, laws and usage" of Kentucky, see *City of Newport* v. *Commonwealth,* 21 Ky. L. Rep. 47, and cases cited; *Nagley* v. *City of Henderson,* 59 S. W. Rep. 19; *Bell County C. & I. Co.* v. *City of Pineville,* 23 Ky. L. Rep. 933; *City of Frankfort* v. *Deposit Bank,* 23 Ky. L. Rep. 1285 (1901), involved the same question. Exemption was claimed by the bank on the ground of a former adjudication of contract in a litigation as to taxes

for the years 1895, 1896, 1897, 1898. The plea of estoppel was held unavailable. See also *Louisville Bridge Co.* v. *Louisville,* 65 S. W. Rep. 814; *Douglass* v. *Comm.,* 15 Ky. L. Rep. 581, affirmed *Douglass* v. *Kentucky,* 168 U. S. 488.

The judgment from which this writ of error is prosecuted not only gives to the judgment relied on as an estoppel herein the same effect which that court has uniformly given to the same character of judgments rendered by the courts of Kentucky, but also the same effect which this court has uniformly given to such judgments.

There are two classes of estoppel by *res judicata*—namely, 1st, "estoppel by former judgment," and 2d, the claim of estoppel now relied on, "estoppel by former verdict." *Keokuk & Western R. R.* v. *Missouri,* 152 U. S. 31.

This character of estoppel is subject to very many restrictions.

Unlike estoppels by former judgment (which apply to all matters both of law and fact, which were litigated and determined in the former suit, and also to all matters which might have been litigated and determined in the former suit) the estoppel by former verdict is restricted to issues of *fact* which were *actually litigated and determined* in the former suit and which arise in the second suit under substantially the same circumstances as in the first action. *Cromwell* v. *Sac,* 94 U. S. 315; *New Orleans* v. *Citizens Bank,* 167 U. S. 371.

And see also *Galpin* v. *Page,* 18 Wall. 374; Freeman on Judgments, 4th ed. vol. 1, § 329, and authorities cited; *C. & V. R. R. Co.* v. *Fosdick,* 106 U. S. 47, in which the reversal of the decree on which the other decrees were based, were held *ipso facto* to vitiate the latter. See also *Butler* v. *Eaton,* 141 U. S. 243.

There is no reason for the chancellor's giving any other or further effect to a decree or order of injunction after the foundation thereof has been destroyed, and the purpose thereof has been fully accomplished, whatever the general language of injunction. *Pennsylvania* v. *Wheeling and Belmont Bridge Co.,* 18 How. 421; *Newport* v. *Newport Light Co.,* 14 Ky. L. Rep. 485.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

The so-called Hewitt law, set forth in the foregoing statement, has given rise to much litigation in the courts of Kentucky, as well as in those of the United States. At one time it was held by the Court of Appeals of Kentucky that its provisions, when complied with by the bank seeking to avail itself of its privileges, constituted a valid and binding contract. *Commonwealth, to use of Franklin · Co.* v. *Farmers' Bank of Kentucky et al.*, 97 Kentucky, 590. In a later case the Court of Appeals of Kentucky held the law not to constitute an inviolable contract. *Deposit Bank of Owensboro* v. *Daviess Co.*, 102 Kentucky, 174. When the law was before this court, the same conclusion was reached. *Citizens' Savings Bank of Owensboro* v. *Owensboro*, 173 U. S. 636.

It may be now regarded as the settled law that this enactment did not constitute a contract between the State and the banks as to taxation, but is subject to modification and repeal by subsequent laws of the State undertaking to tax bank property.

In this case we have to deal with the effect of a decree of the Circuit Court of the United States which is unreversed and affirmed in this court, and in which, between the parties to the present action, it was held that the Hewitt law was a valid enactment and constituted a contract between the parties within the protection of the contract clause of the Constitution of the United States. A proper consideration of the question requires that it shall be distinctly understood just what this decree is. The bill which was the basis of the action of the court was broad in its terms, and sought not only to enjoin the collection of the taxes for the years 1895, 1896, 1897, 1898, which were involved, but to have it finally adjudicated that the Hewitt law constituted a contract between the parties which shielded the bank from taxation after complying with the provisions of that law. The decree not only provided for

a perpetual injunction enjoining the taxation for the years specifically mentioned, but further:

"It is further adjudged, ordered and decreed that by reason of the several pleas of res judicata, relied on by the complainant in its bill and as shown by the exhibits therewith, the complainant has established a contract with the Commonwealth of Kentucky under the provisions of article 2 of the act of the general assembly of the State of Kentucky, entitled 'An act to amend the revenue laws of the Commonwealth of Kentucky,' approved May 17, 1886, and the acceptance of the same by the complainant, the terms of which contract the Commonwealth cannot alter or change without the consent of the complainant; that by the terms of this contract the complainant and its shares of stock cannot, during its corporate existence, be assessed for taxation for state purposes in a different mode or at a greater rate of taxation than as prescribed in said act, and can be assessed for taxation and taxed for county and municipal purposes only upon its real estate used by it in conducting its business; that the provisions of the present constitution of the Commonwealth of Kentucky and the act of November 11, 1892, in so far as they are intended to provide or do provide for any assessment or taxation of the complainant's property, rights of property, or franchise, or shares of stock, except to the extent and in the manner provided by sections 1, 2 and 3 of article 2 of the said act approved May 17, 1886, and except to assess and tax for county and municipal purposes upon its real estate used in conducting its business, are in violation of and repugnant to the Federal Constitution and void."

The constitution of the Commonwealth of Kentucky, adopted after the passage of the Hewitt law, made provision for the enactment of laws for the taxation of the property of banks. Passed under the authority of these constitutional provisions, the act of November 11, 1892, referred to in the decree of the Federal Circuit Court of 1898, is the legislation subsequent to the Hewitt law under which it is sought to assess and collect taxes involved in the present suit. If this decree is to be given

force and effect, as having adjudicated the Hewitt law to be a binding contract covering the right to tax the bank, there can be no question that this subsequent legislation is violative of the constitutional inhibition against the States from enacting laws impairing the obligation of contracts. This legislation is in absolute conflict with the Hewitt law. *Citizens' Savings Bank of Owensboro* v. *Owensboro*, 173 U. S. 636. The decree declares in terms, as direct and specific as it is possible to make them, that the act now sought to be enforced in the assessment and collection of taxes is in violation of the Federal Constitution, and therefore void.

The judgment of the state court upon which the decree of the Federal court is predicated was equally broad in its terms, and covered not only the particular years of assessment then in question but the broader right of the parties to be protected under the Federal Constitution against state enactments in violation of the contract provision of that instrument.

It is urged that the state judgment upon which the Federal decree of 1898 is based was afterward reversed by the highest court of Kentucky, and, therefore, the foundation of the decree has been removed and the decree itself must fall. But is this argument sound? When a plea of *res judicata* is interposed based upon a former judgment between the parties, the question is not what were the reasons upon which the judgment proceeded, but what was the judgment itself, was it within the jurisdiction of the court, between the same parties, and is it still in force and effect? The doctrine of estoppel by judgment is founded upon the proposition that all controversies and contentions involved are set at rest by a judgment or decree lawfully rendered which in its terms embodied a settlement of the rights of the parties. It would undermine the foundation of the principle upon which it is based if the court might inquire into and revise the reasons which led the court to make the judgment. In such case, nothing would be set at rest by the decree; but the matter supposed to be finally adjudicated, and concerning which the parties had had their day in court, could

be reopened and examined, and if the reasons stated were in the judgment of the court before which the estoppel is pleaded insufficient, a new judgment could·be rendered because of these divergent views and the whole matter would be at large. In other words, nothing would be settled, and the judgment, unreversed, instead of having the effect of forever settling the rights of the parties, would be but an idle ceremony. We are unable to find reason or authority supporting the proposition that because a judgment may have been given for wrong reasons or has been subsequently reversed, that it is any the less effective as an estoppel between the parties while in force. In *Crescent City Live Stock Co.* v. *Butchers' Union Slaughter House Co.*, 120 U. S. 141, the question of what effect should be given to a decision of a court of the United States as proof of probable cause in a suit for a prosecution which was alleged to be malicious was before the court. It appeared that the judgment relied upon had been subsequently reversed, and it was held that this made no difference unless it was shown that the judgment was obtained by means of fraud. Mr. Justice Matthews, delivering the opinion of the court, said:

"Its integrity, its validity, and its effect are complete in all respects between all parties in every suit and in every forum where it is legitimately produced as the foundation of an action, or of a defence, either by plea or in proof, as it would be in any other circumstances. While it remains in force it determines the rights of the parties between themselves, and may be carried into execution in due course of law to its full extent, furnishing a complete protection to all who act in compliance with its mandate, and even after reversal it still remains, as in the case of every other judgment or decree in like circumstances, sufficient evidence in favor of the plaintiff who instituted the suit or action in which it is rendered, when sued for a malicious prosecution, that he had probable cause for his proceeding."

The precise question was before the Court of Appeals of New York in *Parkhurst* v. *Berdell*, 110 N. Y. 386, in which case a judgment was relied upon as an estoppel in a suit between the

same parties. The first suit settled certain matters in con-
troversy in the second suit, and was given force and effect as
an estoppel, but was afterward reversed by the appellate court.
The second suit, in which it was relied upon, came before the
Court of Appeals, and it was claimed that the reversal of the
judgment in the first suit would avoid its force as an estoppel
between the parties. The court said (p. 392):

"If the judgment roll was competent evidence when received,
its reception was not rendered erroneous by the subsequent
reversal of the judgment. Notwithstanding its reversal, it
continued in this action to have the same effect to which it was
entitled when received in evidence. The only relief a party
against whom a judgment which has been subsequently re-
versed has thus been received in evidence can have, is to move
on that fact in the court of original jurisdiction for a new trial
and then the court can, in the exercise of its discretion, grant
or refuse a new trial, as justice may require."

It is to be remembered that we are not dealing with the right
of the parties to get relief from the original judgment by bill of
review or other process in the Federal court in which it was
rendered. There the court may reconsider and set aside or
modify its judgment upon seasonable application. In every
other forum the reasons for passing the decree are wholly im-
material and the subsequent reversal of the judgment upon
which it is predicated can have no other effect than to author-
ize the party aggrieved to move in some proper proceeding, in
the court of its rendition, to modify it or set it aside. It cannot
be attacked collaterally, and in every other court must be given
full force and effect, irrespective of the reasons upon which it
is based. Cooley on Const. Limitations, 7th ed. 83 *et seq.*, and
cases cited.

Again, it is urged that the taxes herein involved are those for
different years than were under consideration and covered by
the decree of the Federal court relied upon. The vice of this
argument consists in assuming that the taxes for specific years
were alone involved and covered by the decree of the court.

The controversy was as to the force and effect of the Hewitt law as a contract; not for one year but for all years; not for one assessment, but for all assessments of taxes upon certain property of the bank. The contest was over the contract, and the consequent want of power to collect any and all taxes the assessment of which did violence to the contract rights of the bank. The court had jurisdiction of the parties and of the subject matter of the suit, and it was adjudicated that there was a contract which was entitled to protection against impairment by state legislation within the right guaranteed by the Federal Constitution. This adjudication necessarily included not only the taxes for specific years, but foreclosed the right to collect any taxes concerning which the contract afforded immunity to the bank. That a bank charter and laws having the effect of bank charters may constitute valid and binding contracts conclusive between the parties, is now so well settled by the adjudications of this court as not to be open to discussion. *New Orleans* v. *Citizens Bank,* 167 U. S. 371. In that case it was held that a judgment of the District Court of New Orleans, holding the charter of a bank to constitute a binding and conclusive contract between the parties, although involving the taxes of other years than those in suit, was *res judicata* and conclusive between the parties. In the course of the opinion, Mr. Justice White said:

"The proposition that because a suit for a tax of one year is a different demand from the suit for a tax for another, therefore *res judicata* cannot apply, whilst admitting in form the principle of the thing adjudged, in reality substantially denies and destroys it. The estoppel resulting from the thing adjudged does not depend upon whether there is the same demand in both cases, but exists, even though there be different demands, when the question upon which the recovery of the second demand depends has under identical circumstances and conditions been previously concluded by a judgment between the parties or their privies. This is the elemental rule, stated in the text books and enforced by many decisions of this court. . . ,

"It follows, then, that the mere fact that the demand in this case is for a tax for one year, and the demands in the adjudged cases were for taxes for other years, does not prevent the operation of the thing adjudged, if, in the prior cases, the question of exemption was necessarily presented and determined upon identically the same facts upon which the right of exemption is now claimed."

This case is cited with approval in *Southern Pacific R. R. Co.* v. *United States*, 168 U. S. 1, in which the decisions of this court upon the subject of *res judicata* are reviewed by Mr. Justice Harlan and the general doctrine thus stated:

"A right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact, once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified."

The thing established by the Federal decree relied upon here was the binding and conclusive character of the contract embodied in the Hewitt law and its acceptance. That it was such a contract was then adjudicated, and, irrespective of the reasons given for the decision, must remain concluded until the judgment constituting such adjudication is modified or reversed.

But it is said that the question here is simply what force and effect the state court should give to the decree of the Federal court relied upon. It is argued that there should be given to a Federal judgment the same force and effect that the state court gives to a judgment of a court of the State, in which the Federal judgment is relied upon, neither more nor less. Cases are cited from the Kentucky Court of Appeals which may be said to establish that an adjudication concerning taxes for one year cannot be pleaded as an estoppel in suits in that State involving the taxes of other years. It is true that for some purposes and within certain limits it is only required that the judgments of

the courts of the United States shall be given the same force and effect as are given the judgments of the courts of the States wherein they are rendered; but it is equally true that whether a Federal judgment has been given due force and effect in the state court is a Federal question reviewable by this court, which will determine for itself whether such judgment has been given due weight or otherwise. *Crescent City Live Stock Co.* v. *Butchers' Union Slaughter Co., supra; Pittsburgh R. R. Co.* v. *Loan & Trust Co.,* 172 U. S. 493. In the latter case, Mr. Justice Harlan, after reviewing the cases upon this subject, thus states his conclusion:

"According to these decisions and in view of the statute giving this court authority to reëxamine the final judgment of the highest court of a State denying a right specially set up or claimed under an authority exercised under the United States, it is clear that we have jurisdiction to inquire whether due effect was accorded to the foreclosure proceedings in the Circuit Courts of the United States under which the plaintiff in error claims title to the lands and property in question."

When is the state court obliged to give to Federal judgments only the force and effect it gives to state court judgments within its own jurisdiction? Such cases are distinctly pointed out in the opinion of Mr. Justice Bradley in *Dupasseur* v. *Rochereau,* 21 Wall. 130, where the learned justice says:

"The only effect that can be justly claimed for the judgment in the Circuit Court of the United States, is such as would belong to judgments of the state courts rendered under similar circumstances. Dupasseur and Co. were citizens of France, and brought the suit in the Circuit Court of the United States as such citizens; and, consequently, that court, deriving its jurisdiction solely from the citizenship of the parties, was in the exercise of jurisdiction to administer the laws of the State, and its proceedings were had in accordance with the forms and course of proceeding in the state courts. It is apparent, therefore, that no higher sanctity or effect can be claimed for the judgment of the Circuit Court of the United States rendered

in such a case under such circumstances than is due to the judgments of the state courts in a like case and under similar circumstances."

The cases which, by clear inference, cannot come within this class are to be noticed.

When it was said that no higher sanctity or effect can be given to a judgment of the Circuit Court of the United States than to state judgments, the learned judge is careful to say "in like case under similar circumstances." What are these cases? Manifestly those just stated, wherein the court derives its jurisdiction from the citizenship of the parties and in the exercise of the jurisdiction to administer the laws of the State where the proceedings are had. Where language has been used in other cases to the effect that judgments of the Federal courts are to be given the effect given to domestic judgments, they will be found to be cases where questions of general law are under consideration, and coming within the class suggested by Justice Bradley in the opinion quoted. Such is the case of *Crescent City Live Stock Co.* v. *Butchers' Union Slaughter House Co.*, 120 U. S. 141. It was there held that a judgment of the United States court, relied upon as a ground of probable cause in a suit for malicious prosecution, was to be given the same force and effect as judgments in the state courts. But Mr. Justice Matthews, delivering the opinion, was careful to add:

"Whatever deference may be due to the decisions of the state court of final resort in every case in which it has spoken, and whatever may be the respect to which its decisions upon questions of purely local law established as rules of property may be entitled, they are not authority binding upon the courts of the United States, sitting even in the same State, where the questions involved and decided relate to rights arising under the Constitution and laws of the United States."

In *Embry* v. *Palmer*, 107 U. S. 3, it was held that the Supreme Court of the District of Columbia is a court of the United States and its judgments conclusive in the courts of a State except for

such cause as would be sufficient to set it aside in the courts of the District.

Mr. Justice Matthews, who delivered the opinion, again stated the doctrine that the judgments of the courts of the United States are upon the same footing so far as concerns the obligation created by them with judgments of the States. Other cases are found in the reports stating the general proposition.

In *Union & Planters' Bank* v. *Memphis*, 189 U. S. 71, the question was as to the effect to be given to a state judgment as *res judicata.* It was held that the Federal courts were not required to give such domestic judgments any greater force and effect than was awarded them by the courts of the State where rendered.

But it is equally well settled that a right claimed under the Federal Constitution, finally adjudicated in the Federal courts, can never be taken away or impaired by state decisions. The same reasoning which permits to the States the right of final adjudication upon purely state questions requires no less respect for the final decisions of the Federal courts of questions of national authority and jurisdiction.

This principle is now so thoroughly settled as to need but to be stated. It has been reiterated in a line of decisions following the great judgment of Chief Justice Marshall in *Cohens* v. *Virginia,* 6 Wheat. 264, in which the principle was firmly established. As early as *Ohio Life Insurance & Trust Co.* v. *Debolt,* 16 How. 416, 432, Chief Justice Taney said:

"Indeed, the duty imposed upon this court to enforce contracts honestly and legally made, would be vain and nugatory, if we were bound to follow those changes in judicial decisions which the lapse of time and the change in judicial officers will often produce. The writ of error to a state court would be no protection to a contract, if we were bound to follow the judgment which the state court had given, and which the writ of error brings up for revision here." *McCullough* v. *Virginia,* 172 U. S. 102; *Jefferson Branch Bank* v. *Skelly,* 1

Black, 436; *Douglas* v. *Kentucky*, 168 U. S. 488, 501, and cases
cited.

In the last named case, Mr. Justice Harlan, delivering the
opinion, deals with the question as follows:

"The defendant insists that his rights having been acquired
when these decisions of the highest court of Kentucky were in
full force, should be protected according to the law of the State
as it was adjudged to be when those rights attached. But is
this court required to accept the principles announced by the
state court as to the extent to which the contract clause of the
Federal Constitution restricts the powers of the state legisla-
tures? Clearly not. The defendant invokes the jurisdiction
of this court upon the ground that the rights denied to him by
the final judgment of the highest court of Kentucky, and which
the state seeks to prevent him from exercising, were acquired
under an agreement that constituted a contract within the
meaning of the Federal Constitution. This contention is dis-
puted by the State. So that the issue presented makes it
necessary to enquire whether that which the defendant asserts
to be a contract was a contract of the class to which the Con-
stitution of the United States refers. This court must deter-
mine—indeed, it cannot consistently with its duty refuse to
determine—upon its own responsibility, in each case as it arises,
whether that which a party seeks to have protected under the
contract clause of the Constitution of the United States is a
contract the obligation of which is protected by that instru-
ment against hostile state legislation." *Mobile & Ohio Railroad*
v. *Tennessee*, 153 U. S. 486; *Knox County* v. *Ninth National
Bank*, 147 U. S. 91; *McGahey* v. *Virginia*, 135 U. S. 662.

These cases thoroughly established the proposition that in
no other way can the obligation of the Federal courts under
the Constitution be discharged than by rigidly adhering to the
right and duty to maintain the ultimate right of the Federal
courts to protect the citizens of the United States, and of every
State, in the enjoyment of rights and privileges guaranteed by
the Federal Constitution.

We suppose there is no question that if the state court had refused to give effect to the Hewitt law as a binding contract, and that question were presented here upon writ of error, and this court reached a different conclusion, holding the Hewitt law to constitute a contract, the judgment of the state court would be reversed for the denial of the right claimed under the Federal Constitution. In the present case we are asked to go further and sustain the judgment of the state court in the face of a judgment of a Federal Circuit Court, affirmed in this court, and duly invoked for the protection of the party in whose favor it was rendered in an action between the same parties. In *Des Moines Navigation & Railroad Co.* v. *Iowa Homestead Co.,* 123 U. S. 552, a suit was brought in an Iowa court by the Homestead Company to recover taxes for the years 1864 to 1871. The right to recover the same taxes had been litigated between the same parties and decided adversely to the Homestead Company in the case of *Homestead Co.* v. *Valley R. R.,* 17 Wall. 153. The railroad company set up the decree in its favor as a bar to the action. The Homestead Company replied: "That the decree or judgment referred to is null and void, for the reason that the courts of the United States had no jurisdiction of said suit, and no legal power or authority to render said decree or judgment.", The Supreme Court of Iowa held that the question of prior adjudication had not been properly raised before it, and decided the case without considering the point. This court held that the point was duly made and that the Federal court had jurisdiction in the suit relied upon, and decided in 17 Wallace; and held further that the Supreme Court of Iowa, in refusing to give effect to the prior judgment as an estoppel, had denied to the Navigation Company the Federal right set up. In delivering the opinion, Mr. Chief Justice Waite said:

"As the Circuit Court entertained the suit, and this court, on appeal, impliedly recognized its right to do so, and proceeded to dispose of the case finally on its merits, certainly our decree cannot, in the light of prior adjudications on the same

general question, be deemed a nullity. It was, at the time of the trial in the present case in the court below, a valid and subsisting prior adjudication of the matters in controversy, binding on these parties, and a bar to this action. In refusing so to decide, the court failed to give full faith and credit to the decree of this court under which the Navigation and Railroad Company claimed an immunity from all liability to the Homestead Company on account of the taxes sued for, and this was error."

This reasoning is applicable here. The decree of the Federal court of 1898 gave judgment that the bank had a contract absolving it from all taxes, including those sued for. When the state court refused to give that judgment effect it denied a right secured by the Federal court judgment upon matters wherein its decision was final until reversed in an appellate court, or modified or set aside in the court of its rendition.

In our judgment the adjudication of the Federal court relied upon here, although based upon the judgment of a state court given as a reason therefor, is equally effectual as it would have been had the Federal court reached the conclusion, as upon the original question, that the Hewitt law constituted a binding contract between the parties. Any other conclusion strikes down the very foundation of the doctrine of *res judicata*, and permits the state court to deprive a party of the benefit of its most important principle, and is a virtual abandonment of the final power of the Federal courts to protect all who come before them relying upon rights guaranteed by the Federal Constitution and established by the judgments of the Federal courts.

It is true that the final determination of the courts that the Hewitt law did not constitute a contract, and the reversal of the state court judgment which was the basis of the decree in the Federal court, renders this case one where a court might wish to avoid the application of rules which may seem technical. But the protection of the right of parties as well as the interest of the public to end litigation by a final judgment, and to preserve inviolate the safeguards of the Federal Constitution, should never be overlooked in view of the hardship of particular

cases.   And we repeat that we are not dealing with any right of relief which the State may have in the Federal court wherein the original decree was rendered.

*Judgment reversed and cause remanded.*

Mr. Chief Justice Fuller, with whom concurred Mr. Justice Brewer, Mr. Justice Brown and Mr. Justice Peckham, dissenting:

This was a petition in equity filed by defendant in error in the Circuit Court of Franklin County, Kentucky, seeking the recovery of certain taxes for the years 1893 and 1894, penalties and interest.   To revise the judgment of the Court of Appeals of Kentucky rendered November 19, 1901; this writ of error was sued out, and the question is whether that court erred in declining to direct the Franklin Circuit Court to sustain a plea of former adjudication by the decree of the Circuit Court of the United States rendered June 25, 1898, in enforcement of a decree of the Franklin Circuit Court rendered in the same case February 1, 1896, and which was reversed by the state Court of Appeals, June 19, 1900.

The plea or supplemental answer was filed in the Franklin Circuit Court, February 1, 1901, on the remanding of the case to that court.   The case went off on other points, but, being again carried to the Court of Appeals, it was held that as the taxes involved in this case were those for 1893 and 1894, and those involved in the case in the United States court were the taxes for 1895, 1896, 1897 and 1898, and as it was the settled law of Kentucky that an adjudication in respect of the taxes of one year was not a bar to recovery in litigation in respect of the taxes of another year, the decree of the United States Circuit Court, based on the reversed decree in this case, could not be treated as a bar to the collection of the taxes for 1893 and 1894, on the view that the thing adjudged was the existence of a contract created by the Hewitt law, which exempted the banks from liability for such taxes during the lifetime of

their charters; and that to decide otherwise would be to hold that the prior decree in this case, though reversed, was nevertheless made binding by the decree of another jurisdiction rested upon it, as having determined the invalidity of taxes of other years, notwithstanding the law of the State to the contrary.

And the Court of Appeals was fortified in its conclusion by the fact that the Supreme Court of the United States, the Court of Appeals, and the Circuit Court of the United States in opinions delivered at the time of the rendition of the decree in question, had all held that the Hewitt law did not constitute an irrevocable contract.

The case before us stands in the same situation as if the Franklin Circuit Court had overruled the plea of former adjudication and rendered decree for complainant, and the Court of Appeals had thereupon affirmed that decree; and it seems to me that the Franklin Circuit Court could not have done otherwise in view of the law of the State in respect of litigation as to taxes of different years.

Moreover there is a distinction between estoppel by decree and estoppel by the findings on which the decree rests, in that the one operates as a bar to subsequent suits on the same cause of action, and the other to further litigation of the particular issuable facts found.

And I submit that the thing adjudged by the Circuit Court of the United States was not that the Hewitt law constituted a contract between the State and the banks, which exempted the banks from this taxation, but was that the Board of Councilmen was estopped to deny the alleged contract because of the decree of the Franklin Circuit Court. This is explicitly stated in the decree as the ground of the decree, and the decree could have rested on no other ground, as the suit was in effect a suit to enforce the state court decree, and, conceding the potency attributed to the doctrine of *res judicata*, the Circuit Court of the United States could not have exercised an original judgment on the question of contract or not, but was com-

pelled to accept the existence of the contract as "established" by the decree of the Franklin Circuit Court.

I think it follows that when a decree rests on the establishment by a prior decree of a certain conclusion of law, such ground of the prior decree cannot be treated as merely reasons for the later decree, which as mere reasons may be ignored; and that this must necessarily be so when the court rendering the later decree is shut up to the single question of estoppel. This being so, I differ entirely from the view that the controversy in the Federal court was at large as to the force and effect of the Hewitt law as a contract exempting the banks from taxation not only for the specified years but for all other years. The decree cannot be treated as giving to the Franklin Circuit decree a wider scope than the law of the State allowed, and the law of the State was that the doctrine of *res judicata* is not applicable to taxes for years other than those under consideration in the particular case. See *Union &c. Bank* v. *Memphis,* 189 U. S. 71, 75, and cases cited.

It is true that the decree of the United States Circuit Court enjoined the taxes involved in that suit, and also the taxes for subsequent years, but this was upon the express ground that the decree of the state Circuit Court had established a contract of exemption during the corporate existence of the bank; and whatever the terms of the latter decree, the state law permitted a renewal of the controversy in respect of taxes not directly involved. To apply the Federal decree to any other than the taxes enumerated is to hold that matters of public law can be placed by estoppel beyond the power of reconsideration, a doctrine not heretofore favored by this court. *Boyd* v. *Alabama,* 94 U. S. 645; *Brownsville* v. *Loague,* 129 U. S. 493; *O'Brien* v. *Wheelock,* 184 U. S. 450.

It is the duty of the state courts as well as of the Federal courts to see to it that no act of a state legislature impairing the obligation of a contract is sustained, and it is the duty of the Federal courts as well as of the state courts to see to it that no act of a state legislature is avoided on the pretext of impair-

ment of the obligations of a contract, when in fact there is no contract to impair. Here this court and the highest court of the state of Kentucky agree that there is no contract, and yet a valid law of Kentucky is overthrown on the pretence of a contract which confessedly has no existence. The reason given is that the Federal court once held that there was a contract when in truth that court held that there was no contract, but that defendant in error was estopped to assert that fact by reason of a judgment of the state court, which has since been duly vacated. The decision is, therefore, not based upon any provision of the Federal Constitution, but upon a rule of general law as to the conclusiveness of a judgment. But that rule of general law is, like any other, subject to modification or change by the State, and it is as true of Kentucky as of Tennessee that the rule of *res judicata* as applied to taxes does not embrace other taxes than those immediately in litigation. Repeated decisions of this court are that a Federal judgment is entitled to the same consideration as a state judgment, "no more and no less," and we held in *Union Bank* v. *Memphis* that what effect a judgment of a state court shall have as *res judicata* is a question of state law.

In my judgment the state courts in rendering decree for the taxes of 1893 and 1894 did not refuse to give the Federal decree such effect as it was entitled to.

Of course, I express no opinion as to the taxes for 1895, 1896, 1897 and 1898, the immediate subject of the bill in the United States court. The situation of that case is peculiar. The decree of that court was affirmed in this court on appeal by an equal division, May 15, 1899. 174 U. S. 800. Leave was subsequently granted by this court to appellants to apply to the Circuit Court for leave to file such bill as counsel might be advised. The present defendant in error (appellant there) accordingly applied to that court for leave to file a bill of review, which was denied. 120 Fed. Rep. 165. The case was then carried to the Circuit Court of Appeals for the Sixth Circuit, and that court affirmed the order of the Circuit Court.

191 U. S. FULLER, CH. J., BREWER, BROWN and PECKHAM, JJ., dissenting.

124 Fed. Rep. 18. The court stated that the judgment of the Franklin Circuit Court rested on a former decision of the Court of Appeals of Kentucky holding the revenue act of 1892 void as an impairment of the state's contract with the banks, and that, after the decree of the United States Circuit Court, the Court of Appeals of Kentucky overruled its former decision; and the United States Court of Appeals then held that the consequent reversal of the Franklin Circuit judgment furnished no adequate ground for the revision of the decree of the United States Circuit Court.

The prior decision of the Court of Appeals of Kentucky was rendered June 1, 1895, and is reported 97 Kentucky, 590. That decision was overruled by a decision rendered March 24, 1897, and reported 19 Ky. L. Rep. 248. The decree of the Circuit Court of the United States was rendered June 25, 1898. There were many cases under consideration in the state Court of Appeals, and it happened that the decree of the Franklin Circuit Court was not in fact reversed until June 19, 1900. But as the ground on which that decree rested had been swept away in 1897, the Circuit Court of the United States might well have applied the rule laid down by Lord Redesdale, that where a party comes into a court of equity to have the benefit of a former decree, the court is at liberty to inquire whether the circumstances justified the relief. Mitf. Pl. 96; 138 U. S. 552, 561. This was not done, and the Federal decree has not, as yet, been set aside.

But Lord Redesdale's rule is applicable in this case, and that is in itself sufficient to require the affirmance of the judgment of the Court of Appeals of Kentucky.

My Brothers BREWER, BROWN and PECKHAM concur in this dissent.