NORWOOD v McDONALD, et

Ohio Appeals, 1st District,
Hamilton County.

No. 6124. Decided June 29, 1942.

J. G. Williams, Cincinnati, and
R. F. Badgley, Cincinnati, for appellant.

O'Brien & Bleck, Cincinnati, and
H. G. Hightower, Cincinnati, for
appellees.

OPINION

By MATTHEWS, P. J.

Ada L. McDonald had the fee
simple legal title to real estate, located at the intersection of Allston Street and Minot Avenue in
the city of Cincinnati, Hamilton
county, Ohio, at the time of her
death on April 22nd, 1938. As she
died intestate, that title descended to her heir or heirs at law under the statutes of descent of this
state, charged with any obligation
with reference thereto that survived her death.

In the present action, the plaintiff alleges that he has the legal
title to and is entitled to the immediate possession of this real estate of which Ada L. McDonald
died seized.

The defendants, inter alia, pleaded a former judgment in bar of
this action. After a verdict in favor of the plaintiff, the court sustained a motion for judgment notwithstanding the verdict and rendered judgment for the defendants. The ground on which the
motion was sustained was that the
undisputed evidence proved that
the former judgment precluded a
re-examination of the issues of
title and possession in this case and
required a judgment for the defendants. Judgment was rendered
for them, and this appeal is from
that judgment.

Various objections to the appeal
on procedural grounds have been
made, but we find that the appeal
has been properly taken and that
the record presents the question.

of whether or not the court erred in entering judgment, notwithstanding the verdict.

The action in which the judgment pleaded as a bar to this action was rendered was filed in the common pleas court of Hamilton county, Ohio, in 1939. In his petition, in which he named as defendants the same two parties who are defendants in this action, the plaintiff alleged that Ada L. McDonald held the legal record title of this same piece of real estate, that he and Ada L. McDonald had lived together for more than twenty years up to and including her last illness, that he had supported her, and she had cared for their home, and in addition had conducted rooming house enterprises for which he had financed, and also that she had charge of the funds earned in such enterprises.

He alleged that the decedent used his funds of which she had charge, made a part payment upon certain real estate, that he borrowed an additional sum to apply on the purchase price and a mortgage was given for the balance, that the decedent acted as his agent in that transaction and that "The legal title to said real estate was transferred to said decedent upon an agreement between said decedent and plaintiff that if he predeceased her, his interest and estate in said premises would be wholly vested in said decedent by survivorship, and for the contingency that the decedent should predecease plaintiff, decedent agreed to bequeath and devise her legal title and estate in and to said premises to plaintiff, and that she did execute a will containing such a provision.

He then alleged that this real estate was sold and the proceeds invested in the real estate which was the subject of that action and also this action, the legal title of which was conveyed to the decedent and continued in her name until her death, but that nevertheless "said real estate was held in trust by said decedent for herself and for this plaintiff in common with survivorship, so that the whole beneficial estate therein vested in the survivor of said decedent and of this plaintiff, but defendant, Thomas A. McDonald claims said premises as an heir at law." The plaintiff prayed "that it be held and determined that he has in equity as survivor the whole beneficial estate in said premises of which decedent died seized of the legal title, and that it be determined that said decedent held said premises in trust for plaintiff, and that defendants be barred from any interest or estate therein; and that he have an accounting of the rents and profits after the death of said decedent, and that he have such other and further relief that he may be entitled to in equity."

The defendant Thomas A. McDonald denied the allegations of the petition and asserted title as heir at law of the decedent and prayed for the dismissal of the plaintiff's petition.

In that action, the common pleas court after a trial of the issues found for the defendants and on appeal the Court of Appeals after a trial de novo likewise found for the defendants and entered the judgment pleaded as a bar to this action. In that judgment the Court of Appeals recited that the plaintiff "has not established his case by that degree of proof required by law" and, therefore, rendered judgment for the defendants "that the petition of the appellant be and the same hereby is dismissed at appellant's costs."

Upon the institution of the action at bar in which the plaintiff bases his right to relief on the al-

legation that he was the common law husband of the decedent, and, therefore, her heir at law, there being no issue, the defendants filed an action to enjoin its prosecution on the ground that the former judgment was res adjudicata, and, that, therefore, its prosecution was vexatious. This court denied the injunction. It is now asserted that that judgment precludes the defendants from relying in this case on the judgment in the first case. The issue in the injunction case was, whether defendants, believing that they had a complete defense, could transform that defense into a cause of action to enjoin the action against them, instead of asserting the defense. The denial of the injunction decided only that they could not do that— that their remedy by defense and cross-petition to enjoin further litigation was entirely adequate and that there was no necessity requiring resort to an independent action for an injunction. The judgment in the injunction action, instituted by these defendants, is no bar to their assertion of the bar of the judgment in the action instituted by the plaintiff against them. Cramer v Moore, 36 Oh St 347.

Now is that judgment a defense to this action?

It is urged that the basis of the plaintiff's claim is different in this action from that of the former action. It is said that he was seeking 'to enforce a trust in the first action, whereas, in this action he is asserting a legal title to the premises. Let us analyze the basis of the plaintiff's claims in the two cases, and the relief that could have been granted.

Both of these actions were instituted in the same court and that court was vested with general jurisdiction in law and equity, which it could administer in a single action without any limitation resulting from the form of the action.

In both actions the plaintiff asserted title to this real estate.

Neither action was against Ada L. McDonald. She had died and both plaintiff and defendants were asserting rights and title in this real estate derived from her. In the first case, the plaintiff sought to impress a trust upon the legal title that descended upon the death of Ada L. McDonald to some one other than himself. As by no possible distortion could it be supposed that he was attempting to impose a trust upon property of which he was the absolute legal owner the language of his petition is only capable of the construction that he was attempting to fasten a trust upon the legal title that had descended to Thomas A. McDonald as the sole heir of Ada L. McDonald. He was relying upon a limited title—an equitable title—but as Thomas A. McDonald would have no active duties to perform under the trust asserted, a judgment finding the existence of such a trust would have had the effect of immediately vesting in the plaintiff the absolute legal and equitable title free of all claims of every description by either Thomas A. McDonald or the estate of Ada L. McDonald.

In the case at bar the plaintiff is again asserting a title to the same real estate against the same defendants. And that title is derived from the same person, Ada L. McDonald. In the former action it was derived through agreement, whereas, in this action the assertion is that it was cast by operation of law. Notwithstanding the difference in the nature of the title asserted a judgment for the plaintiff in this case, as in the former case, would have the effect of con-

firming his title and forever barring the defendants.

It is clear, therefore, that in both cases the plaintiff in his individual capacity, and not in a representative capacity in either, asserts against the same defendants in the same capacity, title to the same real estate.

While many authorities have been cited by counsel reliance ultimately is placed by the plaintiff on Cramer v Moore, 36 Oh St 347 and Porter v Wagner, 36 Oh St 471, which are described by them as the leading cases in the United States for the proposition that refusal of equitable relief is no bar to an action at law. It is asserted that those cases are conclusive against the defense either of estoppel by judgment or res adjudicata based on this judgment. The defendants deny the applicability of these cases and rely on Bolles v Toledo Trust Co., 136 Oh St, 517, and Northern Pacific Railway Co. v Slaght, 205 U. S. 122, in support of the validity of the judgment as a defense. Let us consider these cases.

Cramer v Moore, 36 Oh St 347, was an action upon four negotiable notes given by Cramer to Allen & Hopkins and endorsed by them to Moore before maturity. Cramer answered that the notes were obtained through fraud and that at the time Moore acquired title the payees were restrained from negotiating them pending a hearing in an action to require them to deliver them up for cancellation. Moore replied denying the fraud, averring that he acquired the notes in the usual course of trade for a valuable consideration without knowledge of any fraud, and he also alleged that in the action for an injunction and cancellation, the defendant had alleged substantially the same facts and that upon final hearing his action had been dismissed upon the merits, and he was, therefore, estopped from defending on the ground of fraud. The court held that the defendant was not estopped from relying on the defense of fraud. At 349 the court said:

"We do not question the principle insisted upon on behalf of the defendant in error, Moore, that a judgment of a court of competent jurisdiction, upon a question necessarily involved in a suit, is conclusive in a subsequent suit between the same parties, depending on the same question; and in respect to this · quality of conclusive effect upon parties and privies, the decrees of courts of equity, upon matters within their jurisdiction, stand upon the same footing with judgments at law.

"But in determining the application of this principle to the present case, regard must be had to the nature of the equitable jurisdiction called into exercise in dismissing the petition seeking the surrender and cancellation of the notes in question.

"The foundation of equitable jurisdiction is the inadequacy of the common law to afford the necessary relief. Hence, there is a marked distinction between cases where equity interferes with the remedies afforded to parties by the course of the common law, and cases where equity refuses to interfere."

And. at page 350:

"The only effect, therefore, in our opinion, of the dismissal of the petition, was to declare that the plaintiff had no equitable right to maintain the action; and that the rights of the parties remained the same as if no action had been brought, or injunction allowed, save only that the dismissal was

a bar to the bringing of another action for the same matter."

The judgment in that case did not show that the dismissal was on the ground that no fraud had been proven. It could be surmised that it was on the ground that the remedy at law was adequate by pleading the fraud as a defense as was done in the case in which the estoppel was ineffectually interposed.

Cramer v Moore, therefore, falls within the same category as the case in which these defendants sought to enjoin the prosecution of this action. The injunction was denied, not because of any defect of their allegations as a defense but, because that was the way they should use them rather than by attempting to invoke the equitable powers of the court to issue an injunction when there was no inadequacy of the legal remedy. It bears no resemblance to the case originally filed by the plaintiff, the judgment in which is relied on as a defense to this action.

Porter v Wagner, 36 Oh St 471, was an action upon an agreement to repay $1010.00, which had been paid upon a contract to buy real estate. Among other defenses, there was interposed the plea of res adjudicata. The vendor had sued to enforce specific performance. The vendee had relied on numerous defaults and also upon a subsequent agreement, whereby in consideration that he would release the vendee from the agreement to purchase, the vendor would repay the $1010.00 which the vendee had paid on the purchase price. The vendee had prayed that the contract be declared rescinded and the plaintiff ordered to repay. The court found that the vendor was not entitled to specific performance and the vendee was not entitled to rescission, and, there-

fore, dismissed the petition and the counterclaim, and adjudged a division of the costs.

The court construed this judgment to be a dismissal of the petition and counterclaim for want of equity, and not as a judgment on the merits of all the rights of the parties. The court said at page 475: "This left the legal rights of the parties under the contract as distinguished from their equitable rights, unaffected by the judgment." So construed the case clearly falls within the same category as Cramer v Moore, supra.

Neither of these actions was one in which it was sought to recover specific property. The judgment pleaded as a bar in the instant case was rendered in an action to recover title and possession of real estate and an accounting of rents and profits. Title to the specific property was the only basis of relief of any kind. That fact as well as the fact that the judgments as construed by the court did not adjudicate the legal rights of the parties, distinguishes those two cases from the one which is the foundation of the defense in this case.

Now turning to the two cases chiefly relied on by the defendant, let us compare them with the case upon which the defense is predicated in this case.

The syllabus in Bolles v Toledo Trust Co., 136 Oh St, 517, discloses its close analogy to the case at bar. It is:

"A final adjudication that certain inventoried personal property is assets of a decedent's estate and lawfully included in the inventory thereof in a proceeding instituted in Probate Court by filing exceptions to the inventory, is res judicata when properly pleaded as a defense in a subsequent action brought by the person, who in the

former proceeding was exceptor, to engraft a trust for his use and benefit upon the same personal property."

At pages 521 and 522, the Court said:

"Litigants should disclose all their claims and contentions so that there may be a timely end to litigation. By this token a plaintiff should not be permitted to split his claims so as to reserve a handle for the re-litigation of the same subject-matter. In the proceeding on the amended exceptions the exceptor, in maintaining that the property was not lawfully inventorial assets because of a previous gift, really split her claims. She could have put her contention in two-fold form, namely, that the property was hers as donee and, if the evidence failed to show a valid gift, then, that it was hers as cestui que trust. Either claim, if it prevailed, would result in the sustaining of the exceptions.

"Manifestly the precise question made in the case at bar could have been raised in the former case.

"There is still another criterion by which to compare the issues and judgments in the respective cases.

"In testing a former adjudication to ascertain its efficacy as a bar to a subsequent action it is pertinent to inquire whether judgments rendered in the separate causes may both be enforced with consistency. How can both be given full effect?"

The third paragraph of the syllabus to Northern Pacific Railway Co. v Slaght, 205 U. S. 122 is:

"Where a plaintiff could have pleaded rights to property in addition to those pleaded, he and his grantees are bound by that election, and after an adverse judgment cannot again assert title to the same property against the same parties under a different source of title."

At page 131 the court said:

"There is a difference between the effect of a judgment as a bar against the prosecution of a second action for the same claim or demand, and its effect as an estoppel in another action between the same parties upon another claim or demand, Cromwell v County of Sac, 94 U. S.., 351; Bissel v Spring Valley Township, 124 U. S. 225; New Orleans v Citizens Bank, 167 U. S. 371; Southern Pacific Railroad Company v United States, 168 U. S. 1; Gunter v Atlantic Coast Line, 200 U. S., 273; Deposit Bank v Frankfort, 191 U. S., 499, and a distinction between personal actions and real actions is useful to observe. Herman on Estoppel, sec. 92. It is there said: 'Although there may be several different claims for the same thing, there can be only one right of property in it; therefore, when a cause of action has resulted in favor of the defendant, when the plaintiff claims the property of a certain thing there can be no other action maintained against the same party for the same property, for that would be to renew the question already decided, for the single question in litigation was whether the property belonged to the plaintiff or not; and it is of no importance that the plaintiff failed to set up all his rights upon which his cause of action could have been maintained; it is sufficient that it might have been litigated.' "

It seems to us that the principle of these two cases rules the case at bar.

In the first case filed by this plaintiff he based his right to recover upon a claim of title and

sought by the judgment of the court to bar the defendants from all right or title hereto and to require them to account to him for the profits they had acquired by their invasion of his title and possession. He sought complete judicial sanction of his claim and had he been successful, he would have been established in his title and possession secure against any possible claim of the defendants.

In the case at bar a successful termination would have placed him in the same impregnable position with the same obligation on the defendants to account to him for the same profits resulting to them by the prior invasion of his title and possession.

To accomplish this result the plaintiff relied upon title. In neither action did he in terms rely upon a complete title. In the first action he relied upon an equitable element of title. In the second case, he relied, in terms, upon a right to immediate possession. But a judgment in his favor in either case would have had the effect of declaring that he was the absolute owner to whom would have been awarded all the processes of the court to restore to him the possession.

It has been said that title to property is no more than a bundle of privileges. Can it be that the policy of the law against vexatious litigation can be evaded by the simple device of unraveling the bundle and basing successive law suits upon single privileges that bear the collective name of title or property? We do not think an affirmative answer would conform to sound policy or sound law. In 2 Freeman on Judgments (5th ed.), 1814, it is said:

"And where an issue is made as to the title of either party it is his duty to present every title or claim to title which he may have, since ordinarily they will all be finally adjudicated either for or against him by the judgment. In other words, it becomes res judicata as to everything which was or might have been urged for or against the title in issue and prevents its subsequent successful assertion, or a successful attack upon it, as the case may be, upon any claim or ground which thus might have been urged, including a previous judgment."

There is another principle or the same principle expressed in different language that stands in the way of a re-litigation of this issue.

In the first action the plaintiff asserted a title as cestui que trust and alleged that Thomas A. McDonald "claimed the legal title as heir at law", and sought to require Thomas A. McDonald to hold that legal title for his benefit. And Thomas A. McDonald asserted complete legal and equitable title as heir at law, and the plaintiff did not controvert the assertion of legal title. While the language of the plaintiff's petition might under other circumstances give room for debate as to the extent of his admission that Thomas A. McDonald was the heir of Ada L. McDonald there can be no doubt in the present circumstances. In order to impress a trust he was required to allege that the legal title was in a defendant who held the legal title. The very nature of the case required it. The allegations, of his petition and his failure to deny the allegations of the answer shows his consciousness of that requirement. To have asserted in that case that he not only owned the equitable title but also owned the legal title would have placed him in the anomolous position of seeking to have himself declared a trus-

tee for his own use. To state a case he was required to and did present to the court Thomas A. McDonald as the heir of Ada L. McDonald and the holder of the legal title, and then sought to hold him as a trustee of that legal title for his benefit. There was no suggestion and could have been none that he (Norwood) was her heir and the holder of the legal title. This shows that the plaintiff's position in this case is completely inconsistent with the position he took in the first action. In 18 Am. Jur., 151, it is said:

"Where, therefore, the remedies at law and in equity are really repugnant and inconsistent, the suitor by invoking the one will not ordinarily be permitted thereafter to resort to the other. This rule is not affected by the facts that under the code practice distinctions between actions at law and suits in equity are abolished and that in a single suit denominated 'a civil action' a plaintiff may avail himself of either legal or equitable remedies or both."

In 2 Freeman on Judgments (5th ed.) 1390, the author says:

"A judgment may result wholly or partly from the concessions of the parties; or in other words, from the fact that one of them has made allegations which the other has not denied, and which the court has therefore had no occasion to investigate. Hence the question arises whether the rules of res judicata apply to matters so conceded, or only to those upon which the parties have taken issue, and which the court has on that account been compelled to decide. Upon principle, we think that the denial of a fact subsequently judicially established ought not to impart to an adjudication any greater effect than if all the parties had expressly or impliedly admitted the fact to be beyond controversy when such adjudication was made; and this is the view taken by the greater portion of the American courts."

And at page 1391, the same author states:

"Where one makes concessions of record material to the issue, the decree involves a finding in accordance with such concessions. In cases where no default is entered, the admissions made by either of the parties, whether in direct terms or by failure to traverse material allegations when called upon to do so, are as conclusive and as available as a bar as if they were proved by witnesses."

See also: 30 Am. Jur., 920, and Northern Pacific Railway Co. v Slaght, supra.

We are, therefore, of the opinion that for this additional reason the plaintiff is estopped by his election from now claiming that he was the common law husband of Ada L. McDonald and as surviving spouse inherited the legal title to this real estate.

For these reasons, the judgment of the common pleas court is affirmed.

ROSS, J., concurs.