**Petition of Larry James WRIGHT.**
**No. FS-68-C-4.**

United States District Court
W. D. Arkansas,
Fort Smith Division.

April 4, 1968.

Charles R. Ledbetter, Martin Green, J. Sam Wood, Fort Smith, Ark., for plaintiff.

Don Langston, Asst. Atty. Gen., Little Rock, Ark., for defendant.

## OPINION

JOHN E. MILLER, Senior District Judge.

There is before the court the petition of Larry James Wright filed February 15, 1968, and amended petition filed March 8, 1968, for writ of habeas corpus for the discharge of the petitioner from the Arkansas Penitentiary where he is presently serving a life sentence.

On February 16, 1967, the Prosecuting Attorney within and for the Twelfth Circuit of the State of Arkansas filed an information charging the petitioner, Larry James Wright, with the crime of rape committed as follows, to-wit: "The said defendant, in the County, District and State aforesaid, on the 24 day of January, 1967, did unlawfully and feloniously, forcibly, and against her will and consent carnally know Sharon Kay Masingale, a female, against the peace and dignity of the State of Arkansas."

The statute alleged to have been violated is Ark.Stat.Ann. § 41–3401.

Ark.Stat.Ann. § 41–3403, provides:

"Any person convicted of the crime of rape shall suffer the punishment of death or life imprisonment."

The defendant was tried to a jury on May 9, 1967, and the jury on the same date returned the following verdict:

"IN THE SEBASTIAN COUNTY CIRCUIT COURT
FORT SMITH DISTRICT
Case No. 811

STATE OF ARKANSAS, Plaintiff

v.

LARRY JAMES WRIGHT, Defendant

VERDICT

"We, the Jury, find the defendant 'Guilty' as charged and fix his punishment at life imprisonment.

"The jury recommends psychiatric treatment be made available to this man.

/s/ R. M. Buzbee
——————————————
Foreman"

Upon the above verdict the defendant on May 12, 1967, was sentenced to the State Penitentiary for life.

On May 22, 1967, the petitioner herein filed a motion for a new trial, in which he set forth certain alleged errors by the court.

On May 25, 1967, the trial court overruled the motion for new trial. An appeal to the Supreme Court of Arkansas was perfected, and on October 16, 1967, the Supreme Court of Arkansas affirmed the judgment of the trial court, Wright v. State of Arkansas, 243 Ark. 221, 419 S.W.2d 320.

ın the original petition for habeas corpus, the petitioner alleged:

"II.

"The petitioner was denied due process of law under the Fifth and Fourteenth Amendments of the United States Constitution and equal protection of the law under the Fourteenth Amendment as set forth in paragraphs one through four of his petition for rehearing (Exhibit 'E') which was filed in the Arkansas Supreme Court and denied. In that petition for rehearing the petitioner gave the Arkansas Supreme Court an opportunity to re-examine the error it had made in the disposition of this petitioner's case and it declined to do so. The petitioner was denied due process in the following particulars:

"A. The trial court allowed the prosecuting attorney to prejudicially accuse the defendant of other sex crimes for which he had never been arrested, indicted or convicted. The trial court did not limit cross-examination attacks by the prosecution on the defendant's credibility to other crimes. This error in cross-examination resulted in the jury's being inflamed and prejudiced as reflected in the verdict recommending psychiatric treatment when the issue of insanity was not presented to them.

B. In his appeal the petitioner raised the issue of limitations on the State's right of cross-examination and cited two Arkansas cases to-wit: Johnson v. State, 161 Ark. 111, 255 S.W. 571; and Hunt v. State, 114 Ark. 239, 169 S.W. 773; and Ark.Stat. 28-707 which limit cross-examination attacks on defendant's credibility and do not allow accusations or questions as to mere arrests, accusations or indictments. The opinion of the Arkansas Supreme Court which is attached hereto as Exhibit 'D' on its face demon-strates that the Court ignored its own State law and its State-imposed limitations on cross-examination in criminal prosecution such as this case.

C. The failure of the Arkansas Supreme Court to apply its own case law and statutes to this defendant is a denial of equal protection of the law under the Fourteenth Amendment.

D. The failure of the Arkansas Supreme Court to decide the issues raised in the appeal is a denial of due process. The failure of the Court to construe, overrule or apply cases cited in point and statutes which are applicable is a denial of due process and equal protection of the law.

"III.

"At the time of the imposition of the sentence the petitioner was legally and medically insane. Attached hereto as Exhibit 'G' is an exact copy of a report of Dr. Sims, a psychiatrist chosen by the Court itself. Attached hereto as shown on page nine of the abstract of the record (Exhibit 'A') is an exact copy of the verdict which states:

" 'We, The Jury, find the defendant "Guilty" as charged and fix his punishment at life imprisonment.

" 'The Jury recommends psychiatric treatment be made available to this man.
/s/ R. M. Buzbee
Foreman'

"The imposition of sentence and the trial of a defendant who is medically insane is a denial of due process of the law and equal protection of the law.

"WHEREFORE, petitioner prays that his application for writ of habeas corpus be granted and that he either be released from his illegal incarceration by the State of Arkansas or that he be given a new trial."

The Attorney General of Arkansas on February 28, 1968, filed a motion to dismiss the petition, to which the petitioner filed a response on March 6.

On March 7, 1968, a hearing on the petition was held, at which the petitioner introduced evidence in support of the petition and at the conclusion thereof asked and was granted leave to file an amended petition to conform to the evidence. The State announced that it had no evidence to offer at that time and was given ten days in which to make an investigation and advise the court whether it desired to submit any evidence or cross-examine petitioner's witnesses.

Following the hearing the petitioner filed an amendment to his petition in which he alleged:

"II.

"In addition to the grounds alleged in the original petition, petitioner now further alleges that he was denied due process of law under the Fifth and Fourteenth Amendments to the United States Constitution on the grounds:

A. The State, on or about May 13–15, 1967, while the case was pending in the trial court, suppressed evidence beneficial to the defendant. That the suppressed evidence established probable cause that the alleged rape of Sharon Kay Masingale was not committed by the defendant petitioner, Larry James Wright, but was committed by Richard Smack, whose name and address was known to the Police Department and the Prosecuting Attorney, together with physical evidence consisting of a purse belonging to Sharon Kay Masingale which was taken the night of the alleged rape, said purse being found under the house of Richard Smack, together with a girdle belonging to another woman, and three rectal syringes.

B. That the State suppressed evidence consisting of a statement taken from Mildred Dodd, another woman who had been raped and who had identified Richard Smack from a high school annual as the person she thought had raped her. That the State failed to reveal this evidence to the defense while the case was on appeal to the Arkansas Supreme Court. That the State failed to reveal this evidence to the defense while the case was pending in the trial court on the motion for new trial. That the State failed to reveal this evidence and suppressed same at the time the defendant was sentenced.

"III.

"That the failure to reveal this evidence adduced by the State when it was known to the Prosecuting Attorney, as shown by the testimony of the investigating officers, constitutes a denial of due process of law under the Fifth and Fourteenth Amendments, and is an unconstitutional suppression of evidence which entitles the petitioner to relief by Habeas Corpus."

On March 21, 1968, the attorneys for the petitioner and the Attorney General of Arkansas, through Honorable Don Langston, Assistant Attorney General, filed a stipulation, in which they agreed:

" * * * that upon cross-examination Captain Marvin Cole, Detective Murray and Officer Carruth of the Fort Smith Police Department would testify that their first knowledge of the facts and evidence as shown on their written reports of May 13, 1967 (petitioner's hearing Exhibit No. 2) and May 15, 1967 (petitioner's hearing Exhibit No. 1) was on the dates as shown on those reports and that upon a further hearing would so testify."

Exhibit No. 2 is a statement by Wendell Carruth dated May 13, 1967, and is as follows:

SUPPLEMENTARY INVESTIGATION REPORT

"F.S.P.D. #42 NO. ————

NAME OF COMPLAINANT MR. SMACK

OFFENSE FOUND PURSE

DETAILS OF OFFENSE, PROGRESS OF INVESTIGATION, ETC.:

DATE MAY 13 19 67

"At approximately 7:50 p. m. date I (Carruth) received a call to go to No. Greenwood and No. J St. to the Smack resident, upon arrival Mrs. Smack came to the door and had a brown ladies purse in her hand and stated that she had found it under her house when her and Mr. Smack was taking the cover from the vent holes under the house. When I (Carruth) arrived at the station started to check inside the purse and found that it belonged to a Mrs. Sharon K. Massingale. Mrs. Massingale is the party that was raped on 1/19/67 where Larry Wright was given life for same. Purse was taken the night of the attack. Purse appeared to have been under the house for a long period of time and appeared to not have been rained on."

Petitioner's Exhibit No. 1 is a statement of Investigating Officer M. L. Murray, and reads as follows:

SUPPLEMENTARY INVESTIGATION REPORT
"F.S.P.D. #42 NO. ————

NAME OF COMPLAINANT Sharon Kay Masingale – Mildred Dodd

OFFENSE Rape

DETAILS OF OFFENSE, PROGRESS OF INVESTIGATION, ETC.:

DATE 5–15 19 67

"This date, went to the Smack residence at No. Greenwood & J. With me was a trusty, Edward Stykes. Under my direction, Stykes crawled under the floor of the house on the west side. He immediately retrieved a ladies girdle from inside one of the vents underneath the house. Along with the girdle, he also found several rectal syringes. These items found approximately in the same place as the purse belonging to Sharon Kay Masingale. These items brought to the PD and tagged and stored as evidence. Finding of above items occurred approximately 9:30 a.m.

"Also, learned that Richard Smack was indeed living in Cambridge, Md. It is thought that he is living either at 208 Willis St. or very near that address. This address may be the address of his girl friend, Lois (last name unknown). Smack did mail a Mother's Day card from Cambridge on May 12, 1967.

"Received two pages out of school annual which bore a picture of Richard Smack on each and then, after finding Mildred Dodd at the Sparks Hosp., showed these pages to Dodd and she stated that she

thought that Smack was indeed the man who had attacked her, but that she could not be sure from just the two small photos. She did state that the features were the same and that the shape of the head was the same and that she was almost sure but that she could not say positively until given a better look at the subject. She also was shown the ladies girdle and stated that altho the person who attacked her did take a girdle, this one was not hers.

"An attempt will be made to secure a better photo for more positive ID. Meanwhile, investigation will continue."

---

The information contained in the above exhibits to the ore tenus testimony of the officers was delivered to the prosecuting attorney on May 15, 1967. The motion of the petitioner for a new trial was filed May 22, 1967, and was under consideration by the court until May 25, 1967, when it was overruled. The prosecuting attorney did not reveal to the attorneys for the petitioner the facts and circumstances as detailed in the reports, and they did not learn of this evidence until a few days before the amended petition for writ of habeas corpus was filed, and after the judgment of the trial court had been affirmed by the Supreme Court of Arkansas.

The court has heretofore referred to the motion of respondent to dismiss the petition which was overruled on February 28. In the motion the respondent alleged that the petition should be dismissed because of the failure of the petitioner to avail himself of the remedy provided by Criminal Procedure Rule No. 1, promulgated by the Supreme Court of Arkansas. This rule appears in 240 Ark. at page 1094 and continues on page 1104. The rule provides that a prisoner in custody under sentence of a circuit court and whose case was not appealed to the Supreme Court, claiming a right to be released, or to have a new trial, or to have the original sentence modified on the ground, (a) that the sentence was imposed in violation of the Constitution and laws of the United States or this State, may file a petition in the state circuit court for relief, but "if the conviction in the original case

was appealed to the Supreme Court, then no proceedings under this rule shall be entertained by the circuit court without prior permission of this Court [Supreme Court of Arkansas]." Since the judgment of conviction in this case was appealed to and affirmed by the Supreme Court, the petitioner does not have the right to file a proceeding in the state court, and for that reason the court overruled the respondent's motion to dismiss. The Supreme Court, on November 6, 1967, denied the petition for rehearing by the appellant.

Sec. 2254(b), 28 U.S.C. (Supp. 1959–67), provides:

"An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner."

Since a rehearing was denied by the Supreme Court, the petitioner should not be required to vainly file a motion for permission to proceed in the state court under the rule referred to above. In the opinion of the court, the petitioner has exhausted the remedies available in the courts of Arkansas. The law does not require the petitioner to seek certiorari in the United States Supreme Court. Fay v. Noia (1963), 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837; Hurt v. Page (10

Cir. 1966), 355 F.2d 169; Hedberg v. Pitchess, Sheriff (9 Cir. 1966), 362 F.2d 511.

Since the petitioner has exhausted all remedies available to him in the courts of Arkansas, the court now turns to a consideration of the merits of the petition for habeas corpus.

The petitioner makes two contentions: (1) that the trial court erroneously allowed the prosecuting attorney to prejudicially cross-examine the defendant and, in effect, charge him with other sex crimes for which he had never been arrested, indicted or convicted; and that the action of the trial court in not limiting the cross-examination of the petitioner amounted to a denial of equal protection of the law under the Fourteenth Amendment; and (2) that the failure of the prosecuting attorney to reveal to the attorneys for the defendant (petitioner) material and competent evidence, whether negligently done or intentionally suppressed, is a constitutional denial of a fair trial under the Fifth and Fourteenth Amendments due process clauses.

The respondent, Hon. Joe Purcell, Attorney General of Arkansas, by Assistant Attorney General Don Langston, contends that there was no suppression of relevant evidence by the prosecuting attorney, and that the cross-examination of the petitioner (defendant) by the prosecuting attorney was proper and within the law.

The court will first consider and discuss the second contention of the petitioner.

It is settled that the jurisdiction of the courts of the United States to issue writs of habeas corpus is limited to cases of persons alleged to be restrained of their liberty in violation of the Constitution or some law or treaty of the United States, and to cases arising under the law of nations. Matters v. Ryan, (1919) 249 U.S. 375, 39 S.Ct. 315, 63 L.Ed. 654. See, also, 28 U.S.C. § 2254(a).

The offense for which the petitioner was tried and sentenced was committed by someone on January 24, 1967, by entering the bedroom through a window in the home of the prosecuting witness, Sharon Kay Masingale. At the conclusion of the act the person attempted to leave the house by the back door and then by the front door, and finally left through the window by which he had entered. Prior to the trial which was held on May 9, 1967, another woman, Mildred Dodd, had been raped by a man partially identified by Mildred Dodd as Richard Smack, who departed from the State shortly before the trial of the petitioner. While the officers were investigating the Smack-Dodd case, Mr. Wendell Carruth, a policeman of the City of Fort Smith, was called to the home of the parents of Richard Smack. Upon arrival, Mrs. Smack met the officer at the door and handed him a lady's brown purse and advised the officer that she had found it under her home when she and Mr. Smack were taking the covers from the vent holes under the house. The officer returned to the police station in the Sebastian County Court House and, upon examination, found that the purse was the property of Sharon Kay Masingale, and had been taken from the home of Mrs. Masingale on the night she was raped. Two days after the purse had been identified as the property of Mrs. Masingale, the officers returned to the Smack residence and made further investigation. A trusty who had accompanied the officers crawled under the house and retrieved a lady's girdle from inside one of the vents underneath the house, along with several rectal syringes. These items were found approximately in the same place as the purse owned by Mrs. Masingale was found. On May 15, 1967, the officers advised the prosecuting attorney of the facts which they had discovered. The trial of the petitioner was concluded on May 9, and the defendant was sentenced on May 12. The motion for a new trial of petitioner was filed May 22, 1967, and was overruled on May 25. Thus, the prosecuting attorney had in his possession the facts as shown by the reports of the officers at

least ten days prior to the overruling of the motion for a new trial, and he did not divulge the facts to the attorneys for the petitioner or to the trial court. As a matter of fact, the information was obtained from the police officers only a few days before the petitioner filed the amended petition.

The respondent contends the evidence found by the officers and in the possession of the prosecuting attorney for a period of ten days prior to the overruling of the motion for a new trial was irrelevant to the guilt or innocence of the petitioner. The court does not agree that the evidence was irrelevant, but is firmly convinced that had the evidence been revealed by the prosecuting attorney and introduced by the petitioner at his trial, the jury may well have found the defendant, the petitioner, not guilty. The very fact that Mrs. Masingale's purse, which was taken by the person who entered her home and committed the offense, was found secreted under the Smack residence is a very strong circumstance, which tends to show that Richard Smack was the person who hid the purse under the house of his parents where he had been living.

In United States ex rel. Almeida v. Baldi (3 Cir. 1952), 195 F.2d 815, the question was, "whether the deliberate suppression by the Commonwealth of Pennsylvania of evidence vital to the defense in the trial of a capital case is such a violation of due process as to vitiate those proceedings." A petition for habeas corpus filed in the federal district court was granted, and upon appeal was affirmed by the Court of Appeals of the Third Circuit. The court, after a consideration of the evidence that had been suppressed, at page 820 said:

"While excluding this evidence, if it had been offered, would have been reversible error, we are of the opinion that the suppression of it, uncorrectable on appeal since it was not in the record, did cause the Commonwealth to overreach Almeida and to deprive him of due process of law."

It will be remembered that the suppressed evidence was not known to the attorneys for petitioner until long after the Supreme Court of Arkansas had affirmed his conviction, and the only way that he could obtain relief is by a petition for habeas corpus.

At page 825 of 195 F.2d the court said:

"In conclusion we state that we are not unmindful of the delicate balance which exists, and which must be preserved, between the Courts of the States and those of the National Government. Every conflict between these courts is by its very nature unseemly and must be avoided if possible. But the judges of the court below and this court, like those of the Commonwealth of Pennsylvania, have duties to perform. Every federal judge takes solemn oath to discharge those duties 'agreeably to the Constitution and laws of the United States.' In accordance with his oath Judge Welsh stayed Almeida's execution and granted him the writ of habeas corpus. We are similarly bound."

In 21 Am.Jur.2d, Criminal Law, § 225, p. 264, the rule is stated as follows:

"Suppression or withholding by the state of material evidence exculpatory to the accused is a violation of due process, irrespective of the good or bad faith of the prosecution. The rule applies whether the suppressed evidence is material to guilt or to punishment, and even though it goes only to the credibility of a witness."

In Levin v. Katzenbach (1966), 124 U.S.App.D.C. 158, 363 F.2d 287, the court held that negligent failure to disclose material evidence entitles a defendant to a writ of habeas corpus without regard to the prosecutor's intent. At page 290 the court said:

"A number of circuits have recently held that the deception that results from negligent nondisclosure is no less damaging than that which is a product of guile and that such nondisclosure entitles the defendant to relief. We find the reasoning of such cases per-

suasive and essential to the fair administration of criminal justice especially in view of the disadvantages facing the accused in the trial process."

 Fairness is a requirement of due process. In United States ex rel. Meers v. Wilkins (2 Cir. 1964), 326 F.2d 135, the court discussed the constitutional right to the revelation of material evidence to assist the defense, and outlined the prosecuting attorney's duty in that regard. At page 136 the court said:

"The law has been established since Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935), that the conduct of state prosecuting officers may be grounds for finding a defendant's right to a fair trial violated and to authorize the federal courts to grant writs of habeas corpus."

Whether or not a prosecuting attorney in a criminal case must disclose evidence in his possession favorable to the accused depends on many factors, and a case-by-case judgment must be made. At page 138 the court said:

" 'It seems likely that many situations will arise in which a prosecutor can fairly keep to himself his knowledge of available testimony which he views as mistaken or false. But there are other circumstances in which a prosecutor must, or certainly should know that even testimony which he honestly disbelieves is of a type or from a source which in all probability would make it very persuasive to a fair minded jury.' "

 Even though the prosecuting witness positively identified the petitioner as her attacker, had the prosecuting attorney revealed these facts to the attorneys for the petitioner while the motion for a new trial was pending, they would have been in a position to press for a new trial on the ground of newly discovered evidence.

The court is convinced that the petitioner has been denied due process by the unfortunate failure of the prosecuting attorney to reveal the evidence which was in his possession ten days prior to the denying of the motion for a new trial.

In view of the conclusion reached by the court that the constitutional rights of petitioner were infringed by the failure of the prosecuting attorney to reveal to the court and to the attorneys for petitioner the existence of the evidence, heretofore referred to, the court ordinarily would not consider the other contentions of petitioner, but because of the highly inflammatory questions that the prosecuting attorney was permitted to ask the defendant, over the objections of the defendant, the court believes it is justified in discussing the situation that was created by the asking of the questions with the consent of the court.

The court has a certified copy of the transcript filed in the Supreme Court on the appeal of defendant from his conviction. At page 132 the transcript discloses the following questions were propounded by the prosecuting attorney in the cross-examination of the defendant:

"Q. I'll ask you if in the month of December, 1966 you didn't talk to Connie Brown at the bus stop there by the Pick'n Poke Grocery and ask her what kind and what color panties she wore?

A. No, sir.

Q. Do you know Mrs. Edith Johnson at 501 North 36th Street?

A. No, sir.

Q. I'll ask you if on the night of December 10, 1965 you were not in the 7–11 Laundry on South 23rd Street and Rogers Avenue where she works, and you exposed your private parts to her?

A. No, sir.

Q. Do you know Mrs. Opal Bevins at 2407 Phoenix?

A. No, sir.

Q. She is an employee for Dr. Knight, Dr. Lambiotte, at the Holt-Krock Clinic. You don't know her?

A. No, sir.

**1008**

Q. I'll ask you if you have not been a window peeper at her home?

A. No, sir."

Ark.Stat.Ann. § 28–707, (1962 Repl.), is as follows:

"A witness may be impeached by the party against whom he is produced, by contradictory evidence by showing that he has made statements different from his present testimony, or by evidence that his general reputation for truth or morality render him unworthy of belief, but not by evidence of particular wrongful acts, except that it may be shown, by the examination of a witness, or record of a judgment, that he had been convicted of a felony."

■ There was no evidence adduced at the trial that the petitioner had been convicted of anything, not even a misdemeanor. The defendant had introduced no testimony to establish that his general reputation for truth and morality was good, and since he had not raised the question, the State did not have the right to attack his reputation and character. Under the statute the State did have the right to show, either by examination of the defendant or record of a judgment, that he had been convicted of a felony. All of the above testimony and many other questions of a similar nature were objected to by the defendant, and the trial court instructed the jury as follows:

"Gentlemen, you understand these questions and answers with respect to this line of questioning which has just been pursued, to which the defense has objected, is not to be considered by you as substantive proof of the offense for which he is being tried. It goes only to his credibility."

The Supreme Court in the consideration of the case held that, as a witness, a defendant could be cross-examined like any other witness, and could be asked as to specific acts for the purpose of discrediting his testimony as a witness. This statement was made by the Supreme Court, notwithstanding its former decisions in Johnson v. State (1923), 161 Ark. 111, 255 S.W. 571; Alford v. State (1954), 223 Ark. 330, 266 S.W. 2d 804; and Edens v. State (1962), 235 Ark. 178, 359 S.W.2d 432.

■ This court realizes that questions of law which arose during the trial in the state court, and were ruled upon by the Supreme Court on appeal from conviction and issues of fact presented to the jury in the trial on instructions given by the trial judge, cannot be reviewed by a federal court in a habeas corpus proceeding, unless the constitutional rights of petitioner were infringed by such procedure. Here the questions that arose and were passed upon by the trial court were questions of law, and even if an error was committed either by the trial court or by the Supreme Court of Arkansas, this court has no authority to correct a wrong if, as above stated, the constitutional rights of the defendant were not infringed.

The verdict that the jury rendered in this case is most unusual. The defendant had not pleaded insanity as a defense and had testified in his own behalf, but something evidently occurred which the record does not contain or explain else the jury would not, after finding the defendant guilty and fixing his punishment at life imprisonment, added the following: "The jury recommends psychiatric treatment be made available to this man."

Upon an examination of the entire record of the trial, the court is convinced that the jury was inflamed by the questions propounded by the prosecuting attorney to the defendant while on cross examination, and that the jury must have had some lingering doubt as to the truth else it would not have suggested psychiatric treatment for the defendant.

■ A defendant is not entitled to a perfect trial, but he is entitled to a fair and complete trial. In Lane v. Warden, Maryland Penitentiary (4 Cir. 1963), 320 F.2d 179, the court, beginning at page 181, discussed the governing law

relative to evidence or allegations of prior crimes or specific acts, as follows:

"It is well established that evidence or allegations of prior crimes are inadmissible at a criminal trial either to establish guilt or to show that a defendant would be likely to commit the crime with which he is charged. Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948); Boyd v. United States, 142 U.S. 450, 12 S.Ct. 292, 35 L.Ed. 1077 (1892); Benton v. United States, 233 F.2d 491 (4th Cir., 1956); Lovely v. United States, 169 F.2d 386 (4th Cir., 1948); Dobbs v. State, 148 Md. 34, 129 A. 275 (1925); Weinstein v. State, 146 Md. 80, 125 A. 889 (1924). The rule and its rationale were explained and approved in Michelson v. United States, supra, where the Court said:

"'Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt. Not that the law invests the defendant with a presumption of good character, Greer v. United States, 245 U.S. 559 [38 S.Ct. 209, 62 L.Ed. 469], but it simply closes the whole matter of character, disposition and reputation on the prosecution's case-in-chief. The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so over-persuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical expe-

rience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.' 335 U.S. at 475–476, 69 S.Ct. at 218."

The court is convinced that the guarantees set forth in the Fifth and Fourteenth Amendments due process clauses were violated, and petitioner did not receive a fair and impartial trial.

Therefore, an order is being entered today granting the petition of Larry James Wright, and directing that he be discharged from confinement in the Arkansas Penitentiary or elsewhere to go hence without day, unless the State of Arkansas proceeds with a new trial on the charges contained in the information within 90 days from the date of the entry of the judgment.