**Ronald S. MONROE,
Petitioner-Appellant,**

v.

**Frank BLACKBURN, Warden, Louisiana State Penitentiary, Angola,
Respondent-Appellee.**

No. 84–3381.

United States Court of Appeals,
Fifth Circuit.

Dec. 4, 1984.

Rehearing and Rehearing En Banc
Denied Jan. 14, 1985.

959

Allan Blumstein, Steven Gey, Douglas G.
Morris, Matthew Fishbein, Eric Freedman,
New York City, John DiGiulio, Baton
Rouge, La., for petitioner-appellant.

Wm. R. Campbell, Jr., Susan Scott Hunt,
Asst. Dist. Attys., New Orleans, La., for
respondent-appellee.

Before REAVLEY, RANDALL and WIL-
LIAMS, Circuit Judges.

REAVLEY, Circuit Judge:

Ronald S. Monroe was convicted in Loui-
siana of first degree murder and was sen-
tenced to death.   After exhausting his
state remedies, he filed this petition for
habeas corpus.  The district court held that
Monroe's right to due process under *Brady
v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10
L.Ed.2d 215 (1964), had been violated dur-
ing the post-conviction relief period, and it
ordered the State to reconsider Monroe's
motion for a new trial under Louisiana law.
Monroe appeals contending that it was er-
ror for the district court not to order the
State to grant him a new trial.  We affirm.

## I. *Facts*

Ronald Monroe was the neighbor of the murder victim, Lenora Collins, who lived in the adjoining one-half of a duplex in New Orleans, Louisiana. He was convicted on January 22, 1980, of her murder after being identified as the murderer by the victim's two children.

The federal district court heard Monroe's application under 28 U.S.C. § 2254 (1982) and held that all of his claims lacked merit except for his claim that he was denied due process. It ordered an evidentiary hearing on that issue before a federal magistrate where it was disclosed that a New Orleans policeman had taken notes of a July 1980 conversation with a detective in Michigan. The notes stated that Collins' former common-law husband, who had murdered his common-law wife in Michigan, made statements indicating he might have murdered Collins as well. These notes were not considered by the state court in its disposition of Monroe's motion for a new trial. Because the State had failed to disclose this information to Monroe, the magistrate concluded that his due process rights under *Brady* had been violated.

The district court adopted the findings and conclusions of the magistrate; however, because the violation occurred during the post-conviction relief period, the court did not order the State to grant Monroe a new trial. Instead, it ordered the State "to grant [Monroe] whatever he was entitled to by way of post-conviction relief ... provided by Louisiana law for a request for a new trial based upon the exculpatory material which the state courts did not have an opportunity to consider."

It is from this judgment of the district court that Monroe appeals, arguing that he should have been granted a new trial as a matter of law. He also raises four other issues. First, he argues that he was sentenced in violation of double jeopardy. Second, he asserts that certain venire members were excluded from the jury in violation of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Third, he argues that he was improperly denied a separate evidentiary hearing on the question whether the "death-qualified" jury that convicted him was predisposed to favor the prosecution on the issue of guilt. Finally, Monroe claims that he was denied effective assistance of counsel.

## II. *Discussion*

### A. *Suppression of Material Evidence*

■ The State argues that Monroe should not have been granted an additional hearing in the state court. That question is not before us because the State failed to cross-appeal. *See Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662 (5th Cir.1982). The State argues that we should consider this point to prevent a miscarriage of justice. *See French v. Estelle*, 696 F.2d 318 (5th Cir.1982), *cert. denied*, 461 U.S. 937, 103 S.Ct. 2108, 77 L.Ed.2d 313 (1983). We see no miscarriage of justice here, although we might have reached a different conclusion from that of the district court.

■ Monroe claims, however, that the district court erred by failing to grant him a new trial. We disagree. The new trial remedy afforded after a *Brady* violation has occurred is given because the defendant's right to a fair trial has been prejudiced by the suppression of evidence. *See United States v. Agurs*, 427 U.S. 97, 108, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976). Monroe has failed to show that his right to a fair trial was prejudiced by the post-conviction suppression of evidence. Indeed, the existence of prejudice to Monroe, arising from the State's failure to disclose the existence of the policeman's notes, is doubtful since the same underlying information was apparently considered as newly discovered evidence in Monroe's motion for new trial. Because an additional state hearing is to be held, in which *all* of the information will be considered, there is no possibility that Monroe's rights will be prejudiced.

### B. *Double Jeopardy*

■ During the sentencing phase of the trial, the jury returned after approximately forty-five minutes of deliberation, and the foreman indicated that a unanimous deci-

sion could not be reached. The foreman also requested instructions on the procedure to follow in the event the deadlock could not be broken. The trial judge responded by instructing the jury that if it was unable to agree unanimously upon a verdict within a reasonable time, a life sentence would be imposed. Monroe claims that the trial judge "coerced" the jury and violated his rights to a fair trial and due process, as well as article 905 of the Louisiana Code of Criminal Procedure, by failing to impose the life sentence at this point.

Aside from any constitutional question, Monroe has no Louisiana authority to indicate that a life sentence must be imposed whenever a trial judge requires a jury to deliberate for a reasonable time before finding that the jurors cannot agree. We see nothing in this record indicating that the trial judge "coerced" the jury, causing it to return the death sentence. Under Louisiana law, the trial judge is the one who determines when a jury is hung for purposes of the applicable statute, La.Code Crim.Proc.Ann.Art. 905.8 (West 1984). The Louisiana Supreme Court held in Monroe's direct appeal that a "palpable abuse of discretion" was not shown. *State v. Monroe*, 397 So.2d 1258, 1271–72 (La.1981). We accept that decision and reject the argument that a constitutional deprivation occurred.

### C. *Witherspoon and Fair Trial*

#### 1. *Voir Dire*

■ Monroe argues that the state trial court abused its discretion by dismissing four venire members. First, we regard John Lee's responses and his statement that he would consider the imposition of the death penalty *only* if the defendant confessed to the crime to be equivalent to the position that he would not consider the death penalty under any circumstances. Second, Florence LeDoux responded: "If we had to recommend the death penalty, I couldn't do it." Carl Woods and Clarence E. Matthews responded similarly. These venire members made it clear that they would not consider the death penalty under any set of facts and circumstances. The trial court did not abuse its discretion under *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), by dismissing these potential jurors. *See O'Bryan v. Estelle*, 714 F.2d 365, 372 (5th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984).

#### 2. *The "Conviction-Prone" Jury*

■ The Supreme Court in *Witherspoon* left open the question whether a defendant might be able to establish that a *Witherspoon*-qualified jury would be predisposed to favor the prosecution on the issue of guilt. 391 U.S. at 521 n. 18, 88 S.Ct. at 1775 n. 18, 20 L.Ed.2d at 784 n. 18. Monroe asserts that the district court should have ordered a separate evidentiary hearing on that issue, arguing that the Supreme Court implicitly adopted such a requirement in *Maggio v. Williams*, 464 U.S. 46, ——, 104 S.Ct. 311, 314, 78 L.Ed.2d 43 (1983). We disagree.

We read *Williams* as a comment on the discretion of the district court in its denial of an evidentiary hearing. In this case, the district court reviewed the findings of the state court and saw no reason for a separate evidentiary hearing. This denial was within its discretion under 28 U.S.C. § 2254(d) (1982).

### D. *Effective Assistance of Counsel*

■ Monroe argues that he was denied effective assistance of counsel because his counsel, John Lawrence, did not investigate the possibility that the victim's former common-law husband had committed the murder. However, Lawrence did interview three other witnesses and he was given no reason to investigate the ex-husband. He indicated that he never considered the "matter as worth much." He assumed that the eyewitness identification of Monroe as the murderer precluded the possibility that someone else had killed her. Monroe was not denied effective assistance; Lawrence made "a reasonable decision that [made further investigation] unnecessary." *Strickland v. Washington*, —— U.S. ——,

——, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984).

Monroe also argues that he was denied effective assistance of counsel because of Lawrence's handling of the sentencing phase of the trial. During that stage of the trial, Lawrence tried to convince the jury of the immorality of the imposition of the death penalty, and of its ineffectiveness as a deterrent against crime. He called as witnesses a priest, a social worker, a professor of criminology, and Monroe's mother. Lawrence also put on evidence of Monroe's lack of a criminal record, his age and his intoxication on the night of the crime. A reasonable effort was put forth in preparing this defense. We recognize that there was very little reason to expect an anti-capital-punishment argument to persuade a *Witherspoon*-qualified jury not to impose the death sentence, but Lawrence made a reasonable choice with the evidence available to him. We agree with the district court's decision that Monroe was not denied effective assistance of counsel.

AFFIRMED.