Ronald S. MONROE

v.

Hilton BUTLER, Warden, Louisiana State Penitentiary, Angola, Louisiana.

Civ. A. No. 83–6277.

United States District Court, E.D. Louisiana.

June 28, 1988.

John D. Giulio, Baton Rouge, La., Allan Blumstein, Douglas G. Morris & Jonathan J. Freedman, New York City, for petitioner.

Brian T. Treacy, Asst. Dist. Atty., New Orleans, La., for respondents.

## ORDER AND REASONS

FELDMAN, District Judge.

Ronald S. Monroe, a prisoner on death row at the Louisiana State Penitentiary at Angola, Louisiana, is before the Court once again. Monroe urges this Court to order the State of Louisiana to grant him a new trial. The Court finds that Monroe is not entitled to such an order in this instance. The request is DENIED, and Monroe's habeas petition is DISMISSED.

### I.

*Procedural Background*

On January 23, 1980, Ronald Monroe was convicted of the first degree murder of Lenora Collins by a New Orleans jury. Since that time, the case has progressed through a maze of posttrial proceedings. Monroe long ago exhausted his state remedies. In those proceedings, he unsuccessfully argued, as one of the issues raised, that the State had violated his constitutional rights, under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose material, exculpatory evidence. The facts are by now familiar to all.

In July of 1980, months after Monroe's trial, Detective Joseph W. Gallardo of the Pontiac, Michigan Police Department informed the New Orleans police that, in the course of Gallardo's investigation of one George Stinson for the murder of his Michigan common law wife, Gallardo had received information indicating that Stinson may have also murdered Lenora Collins. Stinson had previously been married to Ms. Collins and is the stepfather of her two children, who are the two eyewitnesses to her murder. On September 23, 1980 Gallardo again contacted the New Orleans police, telling Officer John McKenzie of a taped interview that Gallardo had conducted with Francis Lee McWilliams, a former prison cellmate of Stinson. According to Gallardo, during this interview, McWilliams related conversations between himself and Stinson, during which Stinson confessed to having stabbed the Michigan woman to death. McWilliams recounted that Stinson had told him that "the same thing happened" to Lenora Collins, his first wife. Finally, Gallardo informed Officer McKenzie that he had received certain unspecified information which suggested that Stinson had intimidated Lenora Collins's two children into testifying against Monroe. Officer McKenzie took notes of this telephone conversation with Detective Gallardo.[1] The State concedes that no person acting on its behalf ever disclosed this exculpatory evidence to Monroe or his attorneys. It is also undisputed that the information did not exist at the time of Monroe's trial.

On December 27, 1983, Monroe moved unsuccessfully for a new trial in state court. Subsequently, on January 3, 1984, the Louisiana Supreme Court denied Monroe's request for a stay of execution.[2] Petitioner began his federal habeas corpus

---

1. A summary that Officer McKenzie made of his notes contained the following information:

    "While in jail, Stinson got to bragging about how he murdered wife in Mich. to cellmate.

    "Stinson also bragged that he had killed his first wife in New Orleans on 9/10/77 and threatened his stepchildren into identifying neighbor as killer ...

    Det. Gallardo also got information from a second source that Stinson had killed New Orleans wife Collins."

2. The Louisiana Supreme Court denied Monroe's petition for a stay of execution over the dissent of Justice Calogero and Justice Lemmon. Those justices noted that Monroe's attorneys had only recently discovered the exculpatory evidence. The justices would have granted the stay to allow Monroe an evidentiary hearing on the evidence.

proceedings on December 30, 1983. On January 4, 1984, this Court granted petitioner a stay of execution to allow for an evidentiary hearing. After that hearing was held, the Magistrate recommended that Monroe's habeas petition was meritorious and that the writ should be granted. By Order and Reasons dated February 28, 1984, this Court adopted the Magistrate's recommendation, holding that the information that the State had failed to disclose to Monroe was *Brady* material. The Court ordered the State to give Monroe "post-conviction relief [comporting] with his constitutional rights." *Monroe v. Maggio*, No. 83–6277, slip op. at 8 (E.D.La. February 28, 1984).

Monroe then moved for an amendment of the Court's Order, by which the Court would compel the state court to grant Monroe a new trial, rather than a new post-conviction relief hearing. The Court denied that motion because Monroe's trial was not itself constitutionally infirm. The Fifth Circuit affirmed this Court's denial of the request to amend. *Monroe v. Blackburn*, 748 F.2d 958, 960 (5th Cir.1984), *cert. denied*, 476 U.S. 1145, 106 S.Ct. 2261, 90 L.Ed.2d 706 (1986). Over the dissents of Justice Marshall and Justice Brennan, the United States Supreme Court denied petitioner's request for a writ of certiorari. The State did not appeal this Court's holding that *Brady* applied to a post-conviction nondisclosure.

Thus, petitioner's case was returned to the Louisiana criminal district court in which it began. He filed a second "Application for Post–Conviction Relief or, in the Alternative, a Motion for a New Trial." Citing this Court's *Brady* ruling, Monroe requested that the state court grant him a new trial. On February 2, 1987, the court denied his motion. Monroe then appealed to the Louisiana Supreme Court, which denied his application for a supervisory writ. On April 25, 1988, the United States Su-

preme Court again denied petitioner a writ of certiorari, with Justices Brennan and Marshall dissenting. *Monroe v. Butler*, ––– U.S. –––, 108 S.Ct. 1582, 99 L.Ed.2d 897 (1988).

Monroe then returned to this Court. He contends here that the State failed to provide him relief consistent with the Court's February 28, 1984 Order.[3] Monroe urges three grounds for his requested relief. He argues, first, that the state court erred by contradicting this Court's ruling that the undisclosed evidence constituted *Brady* material. Second, petitioner argues that, once this Court found the presence of a *Brady* violation, the state court had no choice but to grant him a new trial. Finally, he argues that, even if the state court evaluated his new trial motion under Louisiana new trial standards, the court was bound to find that a new trial was necessary because of the collateral estoppel effect of the Magistrate's recommendation, which this Court adopted in its February 28, 1984 Order.

## II.

### *Discussion*

### A. *The State Court's Brady Mistake*

In this Court's February 28, 1984 Order, the Court clearly held that "Monroe's due process *Brady* rights were violated." *Monroe v. Maggio*, slip op. at 6. Nonetheless, when the state court addressed this same issue, it held: "This Court does not find that the evidence relied on by this applicant involves any interest defined by [*Brady*]." *State v. Monroe*, No. 261–647, slip op. at 1 (La.Crim.D.Ct. Feb. 2, 1987) (opinion on second motion for new trial). Thus, the state court mistakenly rejected this Court's *Brady* holding. That the state court erred in this respect is clear. As Justice Marshall stated in his dissent from the Supreme Court's most recent denial of certiorari in this case:

> The Court believes that jurisdiction is present because of the nature of petitioner's federal constitutional claims. In essence, petitioner asks for habeas relief on the basis of the state's alleged failure to comply with this Court's earlier mandate.

---

**3.** The parties did not seriously brief the issue of jurisdiction. This Court assumed jurisdiction without ordering additional briefing because of the seriousness of the claims and the immediacy of petitioner's execution, which is presently scheduled for July 18, 1988.

"The state court had no authority to reconsider or redecide this issue. Once a federal court has determined a federal question in a case, a state court must recognize and give effect to that determination.... [T]he state court acted beyond the scope of its authority and in disregard of settled law."

*Monroe v. Butler, supra,* 108 S.Ct. at 1584 (Marshall, J., dissenting) (quoting *Deposit Bank v. Board of Councilmen of Frankfort,* 191 U.S. 499, 517, 520, 24 S.Ct. 154, 161, 48 L.Ed. 276 (1903)). *See also Limbach v. Hooven & Allison Co.,* 466 U.S. 353, 361–62, 104 S.Ct. 1837, 1842–43, 80 L.Ed.2d 356 (1984); *Delaware Valley Citizens' Council v. Pennsylvania,* 755 F.2d 38, 43–44 (3rd Cir.), *cert. denied,* 474 U.S. 819, 106 S.Ct. 67, 88 L.Ed.2d 54 (1985). Despite the state court's definite error in failing to give preclusive effect to this Court's *Brady* ruling, the error was harmless in light of the action thereafter taken by the state court.

### B. State Court's Failure to Grant Petitioner a New Trial

Monroe argues that, once this Court found that the State had violated *Brady,* the state court was obliged to give him a new trial. Monroe's argument is similar to the argument he asserted when he asked this Court to amend its first Order to require a new trial. The argument misunderstands both the content of this Court's Order and the nature of *Brady* facts. It confuses the conceptual qualities of a bundle of facts determined to be *Brady* material, with the functional role such material thereafter enjoys.

#### Contents of this Court's First Order

In this Court's February 28, 1984 Order, the Court held that the State's failure to disclose the exculpatory material in violation of *Brady* "impaired [Monroe's] right to file a motion for a new trial or obtain post conviction relief." *Monroe v. Maggio,* slip op. at 7. Accordingly, the Court ordered the State to "provide to Monroe whatever he was entitled to by way of post-conviction relief during the limitation period provided by Louisiana law for a request for a new trial based on newly discovered evidence." *Id.* The Court did not order the State to provide Monroe with a new trial because Monroe's trial was not rendered constitutionally infirm: no *Brady* events occurred until months after trial, during the post-conviction relief period.

On April 25, 1984, petitioner requested that this Court amend its February 28 Order and compel the State to provide Monroe with a new trial. Petitioner argued that, once a *Brady* violation is identified, the only appropriate relief for a federal court to order is a new trial in the state court. But the Court disagreed, stating:

"At this point, to order a new trial would be, in the Court's view disrupt[ive of] a very delicate balance between the State and Federal Government, because the trial of Mr. Ronald Monroe was not Constitutionally [in]firm[ed], only his period of post-conviction relief when exculpatory material was clearly suppressed by prosecuting authorities."

Transcript of Motion to Amend at 14.

As the Court noted in denying the motion to amend and in the February 28, 1984 Order, a federal court presiding over a habeas action has broad discretion in fashioning an appropriate remedy. *See* 28 U.S. C. § 2243 (1982) (court shall dispose of habeas petition as law and justice require). *Carafas v. LaVallee,* 391 U.S. 234, 239, 88 S.Ct. 1556, 1560, 20 L.Ed.2d 554 (1968). *See Latzer v. Abrams,* 615 F.Supp. 1226, 1229 (E.D.N.Y.1985). In the exercise of that discretion, this Court ordered the State of Louisiana to grant petitioner a hearing on a motion for a new trial so that the state court could fully consider the previously undisclosed evidence. The state court, despite its own gratuitous *Brady* ruling, has nevertheless complied with this Court's mandate to it.

#### The Brady Doctrine's Effect

■ Although petitioner couches his argument in terms of an attack upon the state court's decision not to grant him a new trial, petitioner's argument also goes to the heart of this Court's decision not to order a new trial. Petitioner renews his contention that a new trial is the only ap-

propriate remedy for *Brady* violations. This Court disagrees with petitioner's argument now, as it did when petitioner first requested that the Court order a new trial. Petitioner, in substance, presents no new arguments or case authority.

Petitioner's case implicates a factual setting quite different from that of the usual *Brady* cases. In the better-known *Brady* environment, the prosecution has material, exculpatory facts in its possession prior to or at the time of the trial, and the prosecution fails to disclose the existence of that evidence to the defendant. *Brady* teaches, in that setting, that the failure of the State to disclose such information to the defendant is fundamentally unfair and violative of the defendant's rights under the Due Process Clause of the Fourteenth Amendment. *See Brady, supra,* 373 U.S. at 87, 83 S.Ct. at 1196. That is, the trial proceeding in which exculpatory facts are not disclosed is fundamentally unfair, in constitutional terms and values.

In order to constitute a violation of *Brady,* three elements must be present: (1) the prosecution must suppress or withhold evidence, (2) which is favorable, and (3) material to the defense. Those are the conceptual qualities of *Brady* facts. *United States v. Lanford,* 838 F.2d 1351, 1355 (5th Cir.1988); *Porretto v. Stalder,* 834 F.2d 461, 464 (5th Cir.1987); *United States v. Lassiter,* 819 F.2d 84, 86 (5th Cir.1987). *See Moore v. Illinois,* 408 U.S. 786, 794–95, 92 S.Ct. 2562, 2567–68, 33 L.Ed.2d 706 (1972). Evidence is said to be "material" in *Brady* terms, when, viewed in the context of the entire record, it creates a reasonable doubt as to the defendant's guilt that did not otherwise exist in the necessarily unfair proceeding. *Porretto, supra,* 834 F.2d at 464 (citing *United States v. Agurs,* 427 U.S. 97, 112–13, 96 S.Ct. 2392, 2401–02, 49 L.Ed.2d 342 (1976)). Although *Brady* dealt with trial conduct, its theoretical focus deals more broadly with the fairness of the proceeding in which the condemned conduct occurred. In *Brady,* that conduct occurred at trial.

The State has never disputed the fact that the nondisclosed evidence is favorable to Monroe. Nor does the State contend that the evidence is not exculpatory. And this Court found that the evidence was material; it had all the conceptual underpinnings of *Brady*-type facts.

▮ Nonetheless, the State argued that *Brady* did not apply because the nondisclosure did not occur until after the trial. It is instructive to note that nothing in *Brady* or its progeny limits its doctrine of fact-characterization to the pre-conviction context. *Brady* doctrinally stands for the notion that it is fundamentally unfair for the prosecution to withhold material, exculpatory evidence from the defendant and that the proceeding in which the unfairness occurred should be overturned so that the merit of the *Brady* facts can be considered. Clearly, such nondisclosure is as unfair where it prevents a defendant from taking full advantage of post-conviction relief as it is when it results in the forfeiture of the defendant's right to a fair trial. The prosecutor's duty to disclose material, exculpatory evidence continues through the period allowed by the State for post-conviction relief.[4] Any other conclusion would, in the words of the *Brady* Court, "cast[ ] the prosecutor in the role of an architect of a proceeding that does not comport with the standards of justice...." 373 U.S. at 88, 83 S.Ct. at 1197.

That the post-conviction nondisclosure of material, exculpatory evidence presents a claim cognizable under the rationale of *Brady* does not, however, dictate that the only appropriate remedy for such a violation is an order that the State conduct a new trial.[5] A new trial becomes necessary upon the finding of a classic, pre-conviction

---

4. This continuing duty to disclose was recognized by the district court in *In re Wright,* 282 F.Supp. 999 (W.D.Ark.1968). The *Wright* court stated that:

"[T]he petitioner has been denied due process by the unfortunate failure of the prosecuting attorney to reveal the evidence which was in his possession ten days prior to the denying of the motion for a new trial."
282 F.Supp. at 1007. While the *Wright* court did not cite *Brady,* it applied the same notions of due process that *Brady* relied upon.

5. Monroe points out that in *Wright, supra,* note 4, the court granted the petitioner an order

*Brady* violation because such a violation taints the trial proceeding itself. The Court finds unpersuasive petitioner's contention that *Brady* and its progeny compel a new trial, even as a result of post-conviction nondisclosure, as a means of discouraging prosecutorial violations of *Brady*. The cases do not support such a far-reaching intrusion into the State's responsibilities. Rather, *Brady* upsets the unfair proceeding; *Brady* mandates that the previously undisclosed evidence be considered for its otherwise unconsidered assertive value in a new proceeding. *Brady* does not mandate the outcome of that proceeding. It insures a constitutionally fair proceeding. It rectifies the unfairness of the tainted proceeding. Such is the functional role of *Brady* facts once the *Brady* qualities of those facts have been defined.

In this case, the nondisclosure tainted the period of post-conviction relief, not the trial itself. Accordingly, this Court remanded the matter to state court with instructions for the trial court to allow petitioner a hearing on his motion for a new trial in order to consider the undisclosed evidence. After the matter was remanded for a new trial hearing, the applicable law was that of Louisiana. The assertive value of the *Brady* facts must still be measured under state law. The state court held that, under Louisiana law, the evidence formerly withheld from Monroe and his attorneys did not provide a basis for a new trial.[6] In

so doing, the state court's conduct was consistent with this Court's February 28, 1984 Order and with the constitutional safeguards explicit in *Brady*.[7] Thus, the judge's mistaken view of its role concerning what is *Brady* material was harmless error because the judge conducted the hearing this Court ordered and afforded all parties a full and fair hearing. Monroe had his chance to call everyone: Stinson, the cellmate, Detective Gallardo, the New Orleans police officer. He presented no one.

### C. Collateral Estoppel Effect of 1984 Findings and Conclusions

■ Petitioner's final argument is that, even if the state court was not compelled to grant a new trial as a direct result of this Court's *Brady* holding, the state court was bound by the factual findings supporting this Court's first Order. Assuming that federal law of collateral estoppel applies in this case, petitioner still cannot succeed on this claim. In *Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860 (5th Cir.1985), the Fifth Circuit set out the requirements for applying federal collateral estoppel. There are three criteria:

"(1) that the issue at stake be identical to the one involved in prior litigation;

(2) that the issue has been actually litigated in the prior litigation; and

(3) that the determination of the issue in the prior litigation has been a critical

---

compelling a new trial. *Wright* is distinguishable from this case because in *Wright,* other misconduct also occurred during the trial itself.

**6.** The state trial court applied the standards contained in Article 851 of the Louisiana Code of Criminal Procedure, which provides that:

"The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.

The court, on motion of the defendant, shall grant a new trial whenever:

.    .    .    .    .

(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty."

La.Code Crim.Proc.Ann. Art. 851 (West 1984). Petitioner does not challenge the constitutionality of this standard.

**7.** Petitioner argues that, in applying Louisiana's standards for requests for new trials to the previously nondisclosed information, the state court also acted inconsistently with the Louisiana Supreme Court's understanding of *Brady's* requirements.

The petitioner cites *State v. Johnson,* 464 So. 2d 1363 (La.1985), in which the Louisiana Supreme Court held that the court of appeals had erred in applying the standard governing new trial motions based on newly discovered evidence to a case in which the prosecution had failed to disclose evidence in its possession. *Id.* at 1363 (quoting *Agurs, supra,* 427 U.S. at 111, 96 S.Ct. at 2401). *Johnson,* like *Agurs,* however, concerned a pre-conviction nondisclosure which tainted the trial itself. *Johnson* does not suggest a result for this case.

and necessary part of the judgment in that earlier action."

*Id.* at 862. While the operation of federal collateral estoppel barred relitigation of the application of *Brady* to petitioner's case, it did not bar relitigation of the issue properly before the state court. That issue was the appropriateness of a new trial under Article 851 of the Louisiana Code of Criminal Procedure at which the merits of the *Brady* material, its assertive value, could be fully considered to insure a fair post-conviction proceeding. What has been collaterally precluded is an inquiry into the *Brady* qualities of the bundle of facts at issue, not, however, the functional role of those facts. Accordingly, the first requirement of collateral estoppel is not met in this case.

Furthermore, this Court disagrees with petitioner's contention that the state trial court disregarded certain "underlying" factual findings made by this Court. The "factual findings" to which petitioner directs this Court are, in actuality, nothing more than observations about *Brady* qualities, not the functional role of the facts defined by *Brady* values.[8]

Having closely considered each of the petitioner's contentions, the Court determines that nothing in the state court's consideration of his case has been deficient under constitutional notions of fundamental fairness. Accordingly, Monroe's request that this Court order the State of Louisiana to grant him a new trial must be DENIED and his petition for a writ of habeas corpus DISMISSED. Therefore, the petitioner having presented no valid constitutional claims, this Court's stay of execution is lifted.

---

**8.** For example, Monroe points out that this Court drew a parelellism between the Michigan murder and the Collins murder, yet the state court found that Michigan murder was "irrelevant" to this case. Additionally, both this Court and the Magistrate found the statement made by Stinson to his cellmate regarding the similarity of the murders to be significant. The state court, on the other hand, termed Stinson's statement an "ambiguous utterance ... that Ms. Collins died in a manner similar to the demise of [the Michigan victim]" and "merely an observation that both women coincidentally died as a result of being stabbed." *State v. Monroe,* slip op. at 3 (opinion on motion for new trial). Both of these examples were merely observations regarding the *Brady* qualities of the facts, not their assertive value.